PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BENIGNO MONTES-PINEDA, a/k/a
Benigno Pineda Muntez, a/k/a
Benigno Montez-Pineda, a/k/a
Benigno Pineda-Montes,

*Defendant-Appellant.*

No. 05-4471

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-05-36)

Argued: March 17, 2006

Decided: April 24, 2006

Before WILKINSON, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Wilkinson and Judge Michael joined.

## COUNSEL

**ARGUED:** Frances Hemsley Pratt, Research and Writing Attorney,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria,
Virginia, for Appellant. Louis Joseph Ruffino, Special Assistant
United States Attorney, OFFICE OF THE UNITED STATES

ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Suzanne Little, Assistant Federal Public Defender, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Gene Rossi, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Benigno Montes-Pineda pleaded guilty to unlawful reentry after deportation following an aggravated felony conviction. The district court sentenced him to 46 months imprisonment, a term within the properly calculated advisory Guidelines range. Montes-Pineda challenges this sentence as unreasonable. The Government contends that we lack jurisdiction to consider this appeal and, in the alternative, that the sentence is reasonable. As explained below, we hold that we have jurisdiction, but that Montes-Pineda's sentence is not unreasonable under *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, we deny the Government's motion to dismiss and affirm the judgment of the district court.

I.

The parties have stipulated to all of the relevant facts. Montes-Pineda, a native and citizen of Honduras, has been deported from the United States at least three times prior to his current conviction: on July 19, 1989; on April 14, 1992; and on October 5, 1992. His April 1992 deportation resulted from a 1991 conviction for trafficking in cocaine, an offense that qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B) (2000). In November 2004, Montes-Pineda was convicted of driving while intoxicated in Virginia. Upon realizing that Montes-Pineda was a previously deported alien, federal prosecutors charged him with unlawful reentry after deportation following an aggravated felony conviction, in violation of 8 U.S.C. § 1326 (2000). Montes-Pineda pleaded guilty to the offense.

The United States Probation Office submitted a presentence investigation report (PSR) to the district court and the parties. In that report

the probation officer — applying U.S.S.G. § 2L1.2(a) and (b)(1)(A)(i) (2004) — calculated that Montes-Pineda's base offense level was 8 and then added 16 levels for a total offense level of 24. Deducting three levels for acceptance of responsibility, and applying a criminal history category of III, the probation officer determined that Montes-Pineda's advisory Guidelines sentencing range was 46 to 57 months.

Both the Government and Montes-Pineda agreed to all of the facts in the PSR and to the probation officer's calculation of the Guidelines range. However, Montes-Pineda "urge[d] [the district court] to find a non-guideline sentence appropriate in this case" and suggested that a sentence of 24 months would be appropriate. Noting the need for "punishment and deterrence" and Montes-Pineda's "criminal history," which the court found "disturb[ing]," the district court rejected that suggestion and sentenced Montes-Pineda to 46 months in prison. Montes-Pineda filed a timely appeal.

## II.

The Government initially contends that we must dismiss this appeal for lack of jurisdiction. Montes-Pineda counters that we have jurisdiction under 18 U.S.C.A. § 3742 (West Supp. 2005). That statute provides, *inter alia*, that defendants may appeal sentences "imposed in violation of law." 18 U.S.C.A. § 3742(a)(1). The Government argues that since Montes-Pineda's sentence is within a properly calculated Guidelines range, it cannot have been "imposed in violation of law." We disagree.

First, the Supreme Court at least implicitly rejected this jurisdictional argument in *Booker*, explaining that "the [Sentencing Reform] Act continues to provide for appeals from sentencing decisions (irrespective of whether the trial judge sentences within or outside the Guidelines range in the exercise of his discretionary power under § 3553(a))." 543 U.S. at 260 (Breyer, J., opinion for the Court). Unsurprisingly, in light of this language, every court of appeals to consider this question has held that it has jurisdiction to review sentences within a properly calculated Guidelines range. *See United States v. Jimenez-Beltre*, 440 F.3d 514, 517 (1st Cir. 2006) (en banc); *United States v. Cooper*, 437 F.3d 324, 328 & n.5 (3d Cir. 2006);

*United States v. Martinez*, 434 F.3d 1318, 1321 (11th Cir. 2006); *United States v. Mickelson*, 433 F.3d 1050, 1052 (8th Cir. 2006).

In addition to being foreclosed by precedent, the Government's argument also relies upon a faulty premise: that all sentences within a properly calculated Guidelines range are necessarily lawful. Other courts of appeals have also rejected this premise. *See, e.g.*, *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *United States v. Talley*, 431 F.3d 784, 786-87 (11th Cir. 2005); *United States v. Cunningham*, 429 F.3d 673, 675 (7th Cir. 2005); *United States v. Webb*, 403 F.3d 373, 385 n.9 (6th Cir. 2005); *United States v. Crosby*, 397 F.3d 103, 115 (2d Cir. 2005). We must do the same, because Congress has directed in 18 U.S.C.A. § 3553(a) (West Supp. 2005) that the applicable Guidelines range is only one factor that sentencing courts must consider in imposing a proper sentence. *Booker*, 543 U.S. at 259-60. Holding that a sentence within a properly calculated Guidelines range is automatically lawful would render superfluous the other § 3553(a) factors and so contravene the statute's mandatory language. *See* 18 U.S.C.A. § 3553(a) ("The court, in determining the particular sentence to be imposed, *shall* consider . . . ." (emphasis added)).

Alternatively, the Government contends that even if a within-Guidelines sentence might at times be unlawful, such a sentence cannot be unlawful simply because it is unreasonable. According to the Government, reasonableness is merely the standard of review on appeal and plays no part in the district court's determination of an appropriate sentence. The Government argues that a sentence's unlawfulness — at least for purposes of appellate review under § 3742(a)(1) — stems not from its unreasonableness but rather from other factors, such as an erroneous Guidelines calculation or the Sixth Amendment violation in *Booker*. Since Montes-Pineda has only alleged that his within-Guidelines sentence is unreasonable, and not that it is unlawful for any other reason, the Government contends that he has not made any claim cognizable on appeal.

This argument presents little more than a slight twist on the Government's initial jurisdictional argument. We find it no more persuasive because it fundamentally misunderstands both what is required of a sentencing court and what is involved in an allegation of unrea-

sonableness. Section 3553(a) compels district courts to consider several factors in order to impose lawful sentences. *Booker* made clear that a sentence's reasonableness is defined in terms of these factors. 543 U.S. at 259-60. *See also Cunningham*, 429 F.3d at 675 ("Whether a sentence is reasonable depends on its conformity to the sentencing factors set forth in 18 U.S.C. § 3553(a)(2)."). Appellate review for reasonableness is thus, at base, an evaluation of whether the sentencing court properly considered the § 3553(a) factors, as it is required to do. *Id.* at 261. Accordingly, a contention that the district court imposed an unreasonable sentence is *itself* a contention that the court erred under § 3553(a).

This is hardly a novel way for a party to assert error on appeal. Parties often frame their allegations of error in terms of the appellate standard of review — for example, by claiming that the district court abused its discretion in granting or denying certain relief. We do not lack appellate jurisdiction simply because a party invokes the appropriate standard of review.

Accordingly, we turn to Montes-Pineda's challenges to his sentence.

## III.

A sentence after *Booker* may be unreasonable for both procedural and substantive reasons. "A sentence may be procedurally unreasonable, for example, if the district court provides an inadequate statement of reasons . . . . A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission." *See United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006) (citations omitted). Montes-Pineda challenges his sentence on both substantive and procedural grounds. We reject both arguments.

## A.

As we have held repeatedly, a sentence within a properly calculated advisory Guidelines range is presumptively reasonable. *United States v. Johnson*, ___ F.3d ___, 2006 WL 893594, at *2 (4th Cir.

Apr. 7, 2006); *Moreland*, 437 F.3d at 433; *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006). "[A] defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors." *United States v. Sharp*, 436 F.3d 730, 738 (7th Cir. 2006). Here, the § 3553(a) factors clearly support the reasonableness of Montes-Pineda's sentence. The reentry of an ex-felon is a serious offense for which Congress has seen fit to impose a statutory maximum sentence of 20 years. *See* 8 U.S.C. § 1326(b)(2). And Montes-Pineda is a chronic offender for the crime of his conviction: he concedes that he has illegally reentered this country at least three separate times after being deported. The district court's sentence, which is at the low end of the applicable advisory Guidelines range, does not seem unreasonable in light of the nature of the offense and the need to deter Montes-Pineda in the future.

Montes-Pineda, however, raises several arguments against the reasonableness of his sentence, such as his noncriminal motivation (he illegally reentered to reunite with his children and to obtain necessary medical treatment), the age of his aggravated felony (which occurred fourteen years ago), and the fact that he has never before served a lengthy prison sentence. Although these considerations are relevant under § 3553(a), we need not resolve here whether they would suffice to demonstrate the reasonableness of a below-Guidelines sentence in another case, because they do not show that the sentence Montes-Pineda received was *un*reasonable. Most importantly, these factors — which Montes-Pineda never contends distinguishes his case from others' — do not necessarily outweigh the seriousness of Montes-Pineda's offense and his undisputed recidivism.

Montes-Pineda also alleges that his sentence creates an "unwarranted sentencing disparit[y] among defendants," 18 U.S.C.A. § 3553(a)(6), because Virginia is a non-"fast track" district where defendants systematically receive higher sentences than similar defendants in "fast track" districts. As the Tenth Circuit has explained:

> Fast-track sentencing programs originated with federal prosecutors in states bordering Mexico, who were faced with increasing numbers of illegal reentry and other immigration cases. They accordingly designed programs whereby defendants accused of certain immigration offenses would plead

> guilty early in the process and waive their rights to file certain motions and to appeal, in exchange for a shorter sentence. The shorter sentence was accomplished either by charge-bargaining or by promising to recommend a downward departure at sentencing.

*United States v. Morales-Chaires*, 430 F.3d 1124, 1127 (10th Cir. 2005). Montes-Pineda has convincingly demonstrated that significant sentencing disparities exist between "fast track" and non-"fast track" districts. But he has not shown that, in light of the other § 3553(a) factors, a general allegation of such disparities *compelled* the district court to impose a below-Guidelines sentence in his particular case. *See id.* at 1131.

It would be especially inappropriate to impose such a general requirement on district courts in non-"fast track" districts, given that Congress seems to have endorsed at least some degree of disparity by expressly authorizing larger downward departures for defendants in "fast track" districts. Specifically, the PROTECT Act ordered the Sentencing Commission to promulgate "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act") § 401(m)(2)(B), Pub. L. No. 108-21, 117 Stat. 650, 675 (2003).* "[T]o *require* the district court to vary from the advisory guidelines based solely on the existence of ['fast track'] programs in other districts would conflict with the decision of Congress to limit the availability of such sentence reductions to select geographical areas." *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2006) (emphasis added).

This is not to say that a district court may *never* consider the disparities between "fast track" and non-"fast track" districts in calculating an appropriate sentence under § 3553(a). Several courts have already held that the need to avoid such sentencing disparities may support below-Guidelines sentences in particular cases. *See, e.g.*,

---

*The Sentencing Commission subsequently promulgated U.S.S.G. § 5K3.1 (2004).

*United States v. Santos*, 406 F. Supp. 2d 320, 324-27 (S.D.N.Y. 2005); *United States v. Medrano-Duran*, 386 F. Supp. 2d 943, 947 (N.D. Ill. 2005); *United States v. Peralta-Espinoza*, 383 F. Supp. 2d 1107, 1112 (E.D. Wis. 2005); *United States v. Ramirez-Ramirez*, 365 F. Supp. 2d 728, 732 (E.D. Va. 2005); *United States v. Galvez-Barrios*, 355 F. Supp. 2d 958, 963 (E.D. Wis. 2005). *But see United States v. Martinez-Flores*, 428 F.3d 22, 30 n.3 (1st Cir. 2005) (suggesting but not holding the opposite conclusion); *United States v. Perez-Chavez*, 2005 U.S. Dist. LEXIS 9252, at *1-*3 (D. Utah May 16, 2005). We do not pass on the validity of such approaches here. Rather, we hold that merely pointing out the existence of such disparities, with no reference to the characteristics of the particular defendant, does not render a within-Guidelines sentence unreasonable. *See United States v. Martinez-Martinez*, ___ F.3d ___, 2006 WL 722140, at *3 (7th Cir. Mar. 23, 2006).

### B.

Montes-Pineda further argues that the district court inadequately articulated the reasons for his sentence. District courts are obligated to explain their sentences, whether those sentences are within or beyond the Guidelines range, although they should "especially explain[ ]" sentences outside this range. *See Green*, 436 F.3d at 456. *See also Moreland*, 437 F.3d at 432, 434; *cf.* 18 U.S.C.A. § 3553(c). Of course, a court need not "robotically tick through § 3553(a)'s every subsection." *Johnson*, 2006 WL 893594, at *5. However, a district court's explanation must be elaborate enough to allow "an appellate court to effectively review the reasonableness of the sentence." *United States v. Williams*, 432 F.3d 621, 622 (6th Cir. 2005). In particular, we believe that a district court's explanation should provide some indication (1) that the court considered the § 3553(a) factors with respect to the particular defendant, *see United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005); and (2) that it has also considered the potentially meritorious arguments raised by both parties about sentencing, *see Cunningham*, 429 F.3d at 679.

Here, although the district court did not expressly mention § 3553(a), it clearly invoked three of the § 3553(a) factors: the need to "provide just punishment for the offense," § 3553(a)(2)(A); the need "to afford adequate deterrence," § 3553(a)(2)(B); and "the his-

tory . . . of the defendant," § 3553(a)(1). Furthermore, in determining whether there has been an adequate explanation, we do not evaluate a court's sentencing statements in a vacuum. The context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly.

So it does here. Undisputed facts presented to the district court in the language of § 3553(a) make apparent the basis for its explanation. The court knew (indeed, Montes-Pineda stipulated) that Montes-Pineda was a repeat offender, having illegally reentered the United States at least three times before; that mere deportation had not dissuaded him in the past; and that he had trafficked in drugs during one of his illegal visits here. The district court clearly intended to rely on these facts when it referred to the § 3553(a) factors. We will not vacate its sentence simply because the court did not spell out what the context of its explanation made patently obvious: namely, that a shorter prison term was inappropriate for a defendant who had repeatedly committed a serious offense and who had already proven immune to other means of deterrence.

Nor do we believe that the district court ignored the arguments made by Montes-Pineda to support his request for a below-Guidelines sentence. This is not a case where the district court passively heard the parties' arguments and then seemed to ignore them. *Compare Cunningham*, 429 F.3d at 679. Rather, during the sentencing hearing, the court entertained arguments from both sides on whether to grant Montes-Pineda's request and engaged counsel in a discussion about the disparities between "fast track" and non-"fast track" districts. Thus, there is no basis for doubting that the district court considered Montes-Pineda's contentions.

To be sure, the court could have said more to explain the sentence that it imposed. But the explanation that it did give, in the context of the undisputed record, provides an adequate basis for us to evaluate the reasonableness of Montes-Pineda's sentence.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.