**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4778**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAFAEL RADHAMES DE LA ROSA,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, Chief District Judge.  (CR-05-11)

Submitted:  May 31, 2006              Decided:  June 9, 2006

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Diana H. Cap, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Jennifer May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Rafael Radhames De La Rosa pled guilty to illegal reentry after deportation.  See 8 U.S.C. §§ 1326(a) and (b)(2).  The district court sentenced him to 52 months imprisonment.  De La Rosa now appeals his sentence.  For the reasons outlined below, we affirm.


I.

The underlying facts are not in dispute.  De La Rosa, a native and citizen of the Dominican Republic, was deported from the United States in 1997, after serving a sentence for his conviction of conspiracy to distribute cocaine.  Sometime thereafter, De La Rosa reentered the United States illegally. In November 2003, De La Rosa was arrested in Wake County, North Carolina, and charged with, among other things, possession of cocaine and driving while impaired.  De La Rosa subsequently pled guilty to driving while impaired.  Following his conviction in state court, federal immigration officials arrested De La Rosa and charged him with illegal reentry.  De La Rosa pled guilty to this offense.

The United States Probation Office prepared a Presentence Investigation Report (PSR) for the district court.  The PSR correctly calculated De La Rosa's base offense level as 8 and then added 16 levels, because he had previously been convicted of a felony drug trafficking offense, yielding a total offense level of

24. Deducting 3 levels for acceptance of responsibility, and applying De La Rosa's category III criminal history, the PSR calculated an advisory Guidelines range of 46-57 months.

Although De La Rosa did not object to the calculations in the PSR, De La Rosa urged the district court to "depart" from the advisory Guidelines range and issue a variance (non-Guidelines) sentence. In so doing, De La Rosa argued that his Guidelines range created unwarranted disparity among defendants, because Virginia is a non-"fast track" district, where defendants receive higher sentences than similarly situated defendants in "fast track" districts.[1] Emphasizing the need to provide just punishment for the offense, to deter criminal conduct, and to protect the public from a defendant who demonstrates a "propensity to commit [drug]

_____

[1]Congress authorized fast-track programs as part of the 2003 Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act. See Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003). Specifically, the PROTECT Act directs the United States Sentencing Commission to promulgate a policy statement "authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Id. Accordingly, the Sentencing Commission adopted U.S.S.G. § 5K3.1, which provides that, "[u]pon a motion by the Government, the district court may depart by up to 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." Fast track sentencing programs are utilized by federal prosecutors in states in close proximity to the Mexican border, who are inundated with illegal reentry cases. See United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005).

crimes," J.A. 57, the district court rejected De La Rosa's request and sentenced him to 52 months in prison. De La Rosa timely appealed.

## II.

In imposing a sentence after <u>Booker</u>, the district court must engage in a two-step process. First, the court must correctly calculate the sentencing range prescribed by the Guidelines. <u>United States v. Hughes</u>, 401 F.3d 540, 546 (4th Cir. 2005). Second, the court must consider whether this advisory sentencing range "serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors." <u>United States v. Green</u>, 436 F.3d 449, 456 (4th Cir. 2006). In applying the second step, "the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law." <u>United States v. Moreland</u>, 437 F.3d 424, 433 (4th Cir. 2006). In other words, if the district court, in considering the advisory Guideline range in conjunction with the § 3553(a) factors, believes that an adjustment is warranted, the court should first turn to specific departure provisions in the Guidelines to resolve the issue.[2] <u>See</u> <u>id.</u> If the resulting departure range does not

___

[2]For instance, if the district court is concerned with whether the advisory sentencing range is appropriate given a defendant's medical condition, <u>see</u> 18 U.S.C. § 3553(a)(2)(D), the court should first look to U.S.S.G. § 5H1.4, which provides a mechanism for departing downward on this basis.

4

address the court's concerns, or if there is no specific Guidelines departure provision on point, the district court may then impose a non-Guidelines or variance sentence.  See id.

De La Rosa contends that his sentence is "unreasonable, and, when viewed in the totality of the circumstances, does not accomplish the purposes of sentencing put forth in 18 U.S.C. § 3553(a)."  Appellant's Br. at 6.  The Government responds that this court lacks jurisdiction over De La Rosa's claim that his sentence was unreasonable because the district court refused to depart downwardly under the Guidelines.  Alternatively, the Government argues that the sentence is reasonable.  We will address the jurisdictional and reasonableness issues in turn.

A.

The Government argues that because the district court exercised its discretion in denying De La Rosa's motion for a downward departure, this court lacks jurisdiction to review the sentence.  As this court recently recognized, "traditional departures--i.e., those made pursuant to specific guideline provisions or case law remain an important part of sentencing even after Booker."  United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006) (internal quotation marks omitted).  Thus, post-Booker, a district court may still grant traditional upward or downward departures if it finds aggravating or mitigating factors of a kind

or degree that the Sentencing Commission did not consider relevant to the "heartland" of cases. <u>United States v. Hampton</u>, 441 F.3d 284, 287 n.1 (4th Cir. 2006).

Where the district court is aware of its authority to depart under a specific Guidelines provision, but exercises its discretion not to depart, we lack jurisdiction to review that portion of the sentencing decision.[3] <u>See</u> <u>United States v. Wood</u>, 378 F.3d 342, 351 n.8 (4th Cir. 2004); <u>United States v. Bayerle</u>, 898 F.2d 28, 30-31 (4th Cir. 1990). However, because a Guidelines analysis is only one facet of the post-<u>Booker</u> sentencing process, we are not precluded from reviewing other aspects of the sentencing determination. Thus, even where the district court exercises its discretion not to depart under a traditional Guidelines provision, we retain jurisdiction to review the overall reasonableness of the sentence.

In arguing that this court lacks jurisdiction to review the sentence, the Government mischaracterizes De La Rosa's motion. After carefully reviewing the record, we conclude that De La Rosa did not move for a traditional Guidelines departure. Instead, De La Rosa argued that a careful consideration of the statutory factors--particularly the need to avoid sentencing disparities--

---

[3]In the example provided in note 2, <u>supra</u>, if the district court determined that a defendant's medical condition did not warrant a Guidelines departure under U.S.S.G. § 5H1.4, we could not review that aspect of the sentencing determination.

6

warranted a non-Guidelines sentence. Simply put, De La Rosa moved for a variance, rather than a traditional departure. The district court recognized as much when it inquired of De La Rosa's counsel as follows:

> The Court: Counsel for De La Rosa, have I heard all your arguments in furtherance--I interpret this as a motion for a variance--have I heard all of your arguments that you wish to make that are related to your position, De La Rosa's Memorandum and argued today?
>
> Mr. Craven: Your honor, we would ask that the Court take or accept the sentencing memorandum as a motion for a variance.

J.A. 48-49. Accordingly, we are not precluded from reviewing any aspect of the sentencing determination in this case.[4]

B.

Because the district court imposed a sentence within the properly calculated advisory Guidelines range, the sentence is entitled to a rebuttable presumption of reasonableness. Moreland, 437 F.3d at 433. A defendant can rebut a presumption by demonstrating that the sentence is unreasonable in light of the § 3553(a) factors. United States v. Montes-Pineda, __F.3d__, No. 05-4471, 2006 U.S. App. LEXIS 10178, at *2 (4th Cir. April 24, 2006).

---

[4]Although the Government also briefly argues that we lack jurisdiction to review the sentence for unreasonableness because it falls within the advisory Guidelines range, that argument is foreclosed by our recent decision in United States v. Montes-Pineda, __F.3d__, No. 05-4471, 2006 U.S. App. LEXIS 10178, at *2 (4th Cir. April 24, 2006).

7

After assessing this Guidelines sentence in light of the §
3553(a) factors, we conclude that it is reasonable.  As we recently
observed, "[t]he re-entry of an ex-felon is a serious offense for
which Congress has seen fit to impose a statutory maximum sentence
of 20 years."  Id. (citing 8 U.S.C. § 1326(b)(2)).  Further, as the
district court duly noted, De La Rosa has a substantial drug-
related criminal history and has demonstrated an unwillingness to
remain outside of the United States.  In short, the sentence, which
is within the middle of the advisory Guidelines range, serves the
district court's stated interest in providing just punishment for
the offense, providing adequate deterrence, and protecting the
public from future harm.  See U.S.C. § 3553(a)(1).

De La Rosa's argument that his sentence creates unwarranted
sentencing disparity among defendants, see 18 U.S.C. § 3553(a)(6),
because Virginia is a non-"fast track" jurisdiction is foreclosed
by our decision in Montes-Pineda.  In that case, we noted that
although sentencing disparities may exist between fast track and
non-fast track jurisdictions, a general disparity allegation is
insufficient to compel a non-guidelines sentence, especially where
the majority of § 3553(a) factors are best served by a Guidelines
sentence.  Montes-Pineda, 2006 U.S. App. LEXIS 10178, at *3 ("It
would be especially inappropriate to impose such a general
requirement on the district courts in non-'fast track' districts,
given that Congress seems to have endorsed at least some degree of

8

disparity by expressly authorizing larger downward departures for defendants in 'fast track' districts.").

In sum, we conclude that because the district court properly treated the Guidelines as advisory, and properly considered the Guidelines range in conjunction with the relevant statutory factors, the sentence is reasonable.

## III.

For the foregoing reasons, we affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

9