**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 05-5136**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

OLUSHOLA OLADAPO,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Marvin J. Garbis, Senior District Judge. (CR-04-437-MJG)

─────────────

Submitted:  April 11, 2007          Decided:  May 30, 2007

─────────────

Before WILKINSON and KING, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────────

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

─────────────

W. Warren Hamel, VENABLE LLP, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Kwame J. Manley, Tamera L. Fine, Assistant United States Attorneys, Baltimore, Maryland, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Olushola Oladapo was convicted by a jury of possession of stolen mail, 18 U.S.C. § 1708 (2000), and sentenced to sixty months imprisonment. She appeals, claiming, first, that the district court improperly admitted certain hearsay evidence, and second, that the district court failed to exercise its discretion in imposing a sentence under the now-advisory sentencing guidelines. For the reasons that follow, we affirm Oladapo's conviction but vacate and remand for resentencing.

The evidence presented at Oladapo's trial, viewed in the light most favorable to the Government, see <u>United States v. Burgos</u>, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), was as follows. In April 2004, the United States Postal Service began an investigation of stolen bulk mail, including bank documents, credit cards, and credit convenience checks. The investigation focused on Oladapo's husband Kehinde Oladapo because he worked for Southwest Airlines at its cargo warehouse located at BWI airport--which investigators had determined to be the source of the stolen mail--and he had a documented pattern of using Express Mail from the BWI post office to mail small, lightweight packages. The packages were addressed to two different addresses in New York and each had fake return addresses on the labels. Based upon this evidence, a search warrant was issued for the Oladapo residence.

Evidence seized during the search of the Oladapos' home included four stolen Shell Oil Company credit cards, a stolen Citgo credit card, Express Mail receipts, several receipts for money orders made payable to "Shola Oladapo"; and a daily planner that had an entry for "Babayemi Babatayo, 2501 Nostrand Avenue, Number 3G, Brooklyn, New York, 11210." Postal Inspector Mark Carr testified that this was the name and address used on many of the Express Mail packages that were later found to contain hundreds of stolen credit cards and checks.

Claudette Moser, a fraud investigator for Citigroup Investigative Services, testified that, based upon notations on the account statement made by the cardholder, one of the Shell Oil cards was used without the cardholder's authorization.[1] Over Oladapo's objection, the account statement was shown to the jury, with the customer's handwritten annotation disputing the charges. Finally, again over Oladapo's objection, Moser testified that based on her investigation into Kehinde's work schedule, the charges were made while he was at work (thus implicating Oladapo). Oladapo objected to the introduction of Kehinde's work records because Moser was not employed by Southwest Airlines and, therefore, she was not the appropriate witness to introduce those documents. The district court overruled her objection, noting that Moser "has the

_____

[1]The Shell Oil credit cards were issued by Citibank.

requisite background," and that counsel would have the opportunity to cross-examine for any inaccuracies.

The Government also introduced the testimony of a postal clerk who stated that, over the course of a four-year period, Oladapo sent and received Express Mail envelopes at least once per week. Finally, cooperating co-defendants Odukale and Sogbesan testified as to Kehinde and Oladapo's participation in the stolen check and credit card operation. Odukale testified that he sent money orders to Oladapo as payment for stolen checks and credit cards that she had mailed to New York, and also as payment for profits made on those cards. Sogbesan testified that Kehinde provided Oladapo with stolen checks and credit cards to mail.

Based on this evidence, the jury convicted Oladapo of one count of possession of stolen mail (count 3). The district court sentenced her to sixty months imprisonment--the statutory maximum. Oladapo timely appealed.

Oladapo argues, first, that the district court erred in admitting, through Moser and Inspector Carr, the Shell cardholder's handwritten notation and Kehinde's employment attendance records. This court reviews a district court's decision as to the admissibility of evidence for abuse of discretion and will not find an abuse unless a decision was "arbitrary and irrational." United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002). We find that both the handwritten notation on the Shell statement and Kehinde's

- 4 -

employment attendance records satisfy the criteria for the business records exception to the hearsay rule provided by Fed. R. Evid. 803(6). The district court properly found that Moser was qualified to testify as to the results of her investigation of unauthorized use of stolen Citibank credit cards. Oladapo does not challenge the authenticity of the documents at issue--indeed, the parties stipulated that the documents were authentic. Moreover, Oladapo's attorney was able to cross-examine both witnesses. In any event, any error in admitting the evidence was harmless in light of the independent and overwhelming evidence of Oladapo's guilt. See United States v. Seidman, 156 F.3d 542, 558 (4th Cir. 1998) (noting that "improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error").

Next, Oladapo challenges the sentence imposed, arguing that the district court judge did not exercise his discretion to impose a sentence outside of the advisory guidelines range. We agree.

Oladapo's advisory guidelines range was 188-235 months imprisonment. However, because the statutory maximum for the offense of conviction is sixty months, that became the guidelines sentence. After Oladapo's attorney argued for a below-guidelines sentence, citing her family obligations (Oladapo and Kehinde have two young children), and relatively minor role in the conspiracy, the district court made the following concluding statement:

This is a case in which I am looking at sentencing guidelines that are not binding but are advisory. I'm looking at a crime that is, in the global sense, very serious. . . .

If I look at the guidelines, there's two ways to look at the guidelines. I mean, the guideline sentence is 60 months because that's the statutory maximum. The guideline sentence would be way above 60 months without that statutory maximum.

I've got to come to this conclusion. I have a case that's subject to appeal by either side. I do not believe that the Fourth Circuit would affirm a deviation from the guidelines here. I do not think that the Fourth Circuit would find it reasonable or would allow me to find it reasonable to deviate from the guidelines in a case where the guidelines sentence is something like 15 years, or something like that. I think I would deviate from that. I certainly would. I certainly did in the case of Mr. Oladapo.

I want the record to be clear. If the Fourth Circuit is going to review this on appeal, *they should know that, in my judgment, I believe that it could be reasonable to deviate from the guidelines and to reduce the sentence somewhat. But I don't think they would affirm it.* And I don't think it is appropriate for me to do something that I honestly believe they will not affirm.

So, I think I'm required to, and I will have to, impose the sentence of 60 months that is the guideline sentence.

After United States v. Booker, 543 U.S. 220 (2005), this court reviews a district court's sentence for reasonableness. United States v. Hughes, 401 F.3d 540, 546-47 (4th Cir. 2005). "Consistent with the remedial scheme set forth in [Booker], a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." Id. at 546. Next, the district court must consider this range in

conjunction with other relevant factors under the guidelines and § 3553(a) and impose a sentence. Hughes, 401 F.3d at 546. The sentence must be "within the statutorily prescribed range and . . . reasonable." Id. at 546-47 (citations omitted). "[A] sentence within the proper advisory Guidelines range is presumptively reasonable." United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006) (citations omitted). "[A] defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors." United States v. Montes-Pineda, 445 F.3d 375, 379 (4th Cir.) (internal quotation marks and citation omitted), petition for cert. filed, ___U.S.L.W.___ (U.S. July 21, 2006) (No. 06-5439).

A post-Booker sentence may be unreasonable for procedural and substantive reasons. "A sentence may be procedurally unreasonable, for example, if the district court provides an inadequate statement of reasons or fails to make a necessary factual finding." United States v. Moreland, 437 F.3d 424, 434 (4th Cir.) (citations omitted), cert. denied, 126 S. Ct. 2054 (2006). While a district court must consider the various factors in § 3553(a) and explain its sentence, it need not "robotically tick through § 3553(a)'s every subsection" or "explicitly discuss every § 3553(a) factor on the record." Johnson, 445 F.3d at 345. "This is particularly the case when the district court imposes a

sentence within the applicable Guidelines range." Id. (citation omitted).

However, "a district court's explanation should provide some indication (1) that the court considered the § 3553(a) factors with respect to the particular defendant; and (2) that it has also considered the potentially meritorious arguments raised by both parties about sentencing." Montes-Pineda, 445 F.3d at 380 (citations omitted). "[I]n determining whether there has been an adequate explanation, [the Court does] not evaluate a court's sentencing statements in a vacuum." Id. at 381. Rather, "[t]he context surrounding a district court's explanation may imbue it with enough content for [the Court] to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly." Id.

On the record before us, we are unable to discern whether the district court considered the § 3553(a) factors or whether it did so properly. Accordingly, although we affirm Oladapo's conviction, we vacate her sentence and remand for resentencing in order to allow the district court to articulate its reasons for imposing sentence.[2] We dispense with oral argument because the

---

[2]We note that the district court sentenced Oladapo prior to our decisions in Moreland, Johnson, and Montes-Pineda, and thus did not have the benefit of the guidance provided by those cases. We further note that the district court is free on remand to impose the same sentence or a different one; nothing in this opinion should be read to suggest that we have formed any view regarding the appropriate outcome of Oladapo's resentencing.

facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART;</u>
<u>VACATED AND REMANDED IN PART</u>