GREGORY, Chief Judge, dissenting:
 

 The majority ignores established Supreme Court and Fourth Circuit precedent that requires a sentencing court to address a defendant's nonfrivolous arguments for a downward variance in sentencing.
 
 *
 
 Disconcertingly, the majority contends that the "record amply demonstrates" that the district court here addressed Erick Gibbs's four nonfrivolous arguments for a downward variance: his extreme family hardship, the time he had already served, his employability, and the substantial assistance he provided in murder, bank robbery, and drug investigations. But the majority's characterization is blatantly contradicted by the record itself. The district court made
 
 no
 
 mention of three of Gibbs's four arguments, much less explained its reasoning. The majority conveniently omits that a police detective was present at sentencing to testify about Gibbs's assistance in the investigations, and that the district court declined to hear from him without any explanation or further comment concerning the Government's mitigating proffer. The majority further knits from whole cloth an interpretation of the words "all right" and a brief pause-made
 
 after
 
 the sentence was imposed-that, in its view, miraculously addressed not one but
 
 three
 
 of Gibbs's arguments. By resting much of its analysis on this pause rather than anything the district court actually said, the majority implicitly concedes that the court sentenced Gibbs to 24 months' imprisonment without any reference to his nonfrivolous mitigating arguments. Further troubling, the majority conflates substantive and procedural reasonableness, applying our substantive reasonableness presumption to Gibbs's procedural challenge.
 

 By papering over the district court's failings, the majority essentially concludes that Gibbs's extensive criminal history excused the district court from its clearly established obligation to say
 
 something
 
 about Gibbs's nonfrivolous arguments. This flies in the face of our caselaw. Tellingly, the majority does not even cite our decision in
 
 United States v. Blue
 
 , let alone attempt to distinguish this clear and controlling circuit precedent. I am compelled to dissent.
 

 I.
 

 In 2010, Gibbs pled guilty to Possession of Firearm by a Convicted Felon, in violation of
 
 18 U.S.C. §§ 922
 
 (g)(1) and 924(a)(2). The district court sentenced Gibbs to 36 months in prison, followed by an equivalent period of supervised release. Gibbs served his prison sentence and began
 his term of supervised release on June 29, 2012.
 

 In January 2015, Gibbs's probation officer filed a Motion for Revocation on Offender Under Term of Supervised Release on the basis of his use of a controlled substance (marijuana), as well as two instances of criminal conduct. First, the probation officer had uncovered the fact that Gibbs had pled guilty to a North Carolina misdemeanor Possession of Drug Paraphernalia charge in March 2013, for which he was sentenced to 45 days in prison and 18 months of supervised probation. Second, Gibbs was arrested in January 2015 and charged with felony Conspiracy to Traffic Opium/Heroin, as well as felony Maintenance of a Vehicle/Dwelling/Place for Controlled Substance. In October 2015, Gibbs's probation officer filed an Amended Motion for Revocation on Offender Under Term of Supervised Release to reflect Gibbs's guilty plea to the heroin-selling charge, for which Gibbs was sentenced to 19 to 32 months' imprisonment.
 

 At his revocation hearing, Gibbs admitted to violating the terms and conditions of his supervised release as described above. The parties agreed that it was a Grade A violation with a statutory maximum sentence of 24 months, as well as a Guidelines range of 24 months.
 

 Gibbs made four nonfrivolous arguments in favor of a shorter sentence of 12 months. First, Gibbs argued that he had already served 14 months in state prison for the offenses underlying the violation of his supervised release. Second, he argued that a prolonged prison sentence would bring extreme hardship to his family, who attended Gibbs's sentencing hearing in a show of support. Because the mother of Gibbs's three young children is deceased, Gibbs's mother had taken a significant reduction in pay to relocate to Wilmington, North Carolina, to help care for the children. Gibbs argued that his lengthy imprisonment would thus strain the emotional lives of his children-who have a "unique bond" with their father-as well as subtract his earnings from the household. Third, Gibbs described a work program that he had completed, which provided him with the skills to "build a house from the ground up," including framing, painting, and landscaping. Gibbs had also been previously employed by two separate employers. At the time of the hearing, Gibbs was also pursuing his GED.
 

 Finally, in addition to his own mitigating arguments, Gibbs adopted the Government's statements recounting his cooperation in providing law enforcement with helpful information regarding criminal activity. The Government explained that "to his credit," Gibbs had provided agents with truthful information about a murder, a bank robbery, and drug activity in the Wilmington area. The Government's agent-witness was available to further elaborate on Gibbs's cooperative behavior, but the court declined to hear from him.
 

 At sentencing, the district court reiterated Gibbs's violations of supervised release and summarized Gibbs's criminal background as follows:
 

 The defendant has a history of gang affiliation and has prior convictions for assault, marijuana possession, resisting a public officer, possession of stolen goods, trespass, possession of cocaine, possession of a firearm by a felon, possession of a handgun by a minor, carrying a concealed weapon, and driving while license revoke.
 

 J.A. 29. The court added that Gibbs "has a scant employment record and little in the way of marketable job skills" and mentioned only in passing Gibbs's efforts to obtain his GED.
 

 Id.
 

 It then revoked Gibbs's supervised release and sentenced
 him to a 24-month term of imprisonment. By way of explanation, the court said only:
 

 Upon consideration of Chapter 7 of the United States Sentencing Guidelines and the relevant factors listed in 18 U.S.C. Section 3553(a), the defendant's term of supervision is revoked, and the defendant is ordered to be committed to the custody of the Bureau of Prisons or its authorized representative for a period of 24 months.
 

 Id.
 

 When Gibbs requested that the court reconsider the 24-month range, the court replied, "All right," paused briefly, and then declared, "No change. Twenty-four months." J.A. 30.
 

 II.
 

 As the majority opinion notes, district courts have broad discretion in the context of revocation sentencing.
 
 United States v. Webb
 
 ,
 
 738 F.3d 638
 
 , 640 (4th Cir. 2013). That discretion, however, is not unlimited.
 
 United States v. Thompson
 
 ,
 
 595 F.3d 544
 
 , 547 (4th Cir. 2010). While we assume a more deferential appellate posture when reviewing revocation sentences,
 
 United States v. Moulden
 
 ,
 
 478 F.3d 652
 
 , 658 (4th Cir. 2007), we nonetheless "follow generally the procedural and substantive considerations" used in reviewing original sentences.
 
 United States v. Crudup
 
 ,
 
 461 F.3d 433
 
 , 438-39 (2006).
 

 This Court will affirm a revocation sentence if it is within the prescribed statutory range and is not "plainly unreasonable."
 

 Id.
 

 at 439
 
 . To find a sentence plainly unreasonable, we must first determine whether it is "unreasonable at all."
 
 Thompson
 
 ,
 
 595 F.3d at 546
 
 . The unreasonableness inquiry proceeds in two steps.
 
 Gall v. United States
 
 ,
 
 552 U.S. 38
 
 , 51,
 
 128 S.Ct. 586
 
 ,
 
 169 L.Ed.2d 445
 
 (2007). First, we evaluate the sentencing court for procedural reasonableness.
 

 Id.
 

 Errors amounting to procedural unreasonableness include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."
 

 Id.
 

 Only if no significant procedural errors were committed do we go on to evaluate substantive reasonableness.
 

 Id.
 

 Unlike the procedural analysis, the substantive analysis "take[s] into account the totality of the circumstances" surrounding a defendant's sentencing.
 

 Id.
 

 Here, Gibbs challenges only the procedural reasonableness of his revocation sentence.
 

 Gibbs's sentencing was marred by two significant procedural errors. First, the district court failed to address Gibbs's nonfrivolous arguments in favor of a downward variance. Second, the district court failed to adequately explain its imposed sentence. By affirming the district court's sentence despite these procedural errors, the majority opinion fails to follow the binding law of this Circuit and the Supreme Court.
 

 A.
 

 For a revocation sentence to be procedurally reasonable, a court must respond to the defendant's nonfrivolous mitigating arguments.
 
 United States v. Lynn
 
 ,
 
 592 F.3d 572
 
 , 585 (4th Cir. 2010) ;
 
 United States v. Slappy
 
 ,
 
 872 F.3d 202
 
 , 207 (4th Cir. 2017). Both Supreme Court and Fourth Circuit precedent makes clear that the adequacy of a sentencing court's explanation centers on its acknowledgment of the parties' arguments.
 
 See
 

 Rita v. United States
 
 ,
 
 551 U.S. 338
 
 , 339,
 
 127 S.Ct. 2456
 
 ,
 
 168 L.Ed.2d 203
 
 (2007) ;
 
 Lynn
 
 ,
 
 592 F.3d at 584
 
 . As such, a sentencing court's obligation extends to each and every argument the defendant makes.
 
 United States v. Blue
 
 ,
 
 877 F.3d 513
 
 , 516, 519 (4th Cir. 2017) (holding that the district court failed to
 adequately address the defendant's mitigating arguments when it addressed only two out of eight).
 

 At Gibbs's sentencing hearing, Gibbs presented four nonfrivolous arguments to the district court: (1) the time Gibbs already served for the offenses underlying his release violation, (2) the emotional and financial hardship that a longer sentence would impose on Gibbs's family, (3) Gibbs's good prospects for future employment, and (4) the assistance Gibbs provided Wilmington-area law enforcement (adopted from the Government's statements).
 

 Unlike the majority, I see no place in the record where the district court acknowledged Gibbs's nonfrivolous arguments, much less explained why he rejected them.
 
 Slappy
 
 ,
 
 872 F.3d at
 
 207 ;
 
 Lynn
 
 ,
 
 592 F.3d at 585
 
 . Even if one were to take the court's mention that Gibbs has "little in the way of marketable job skills"-an observation that appears plainly mistaken in light of the undisputed facts in the record-as evidence that the court considered Gibbs's second argument, the court still entirely overlooked three of Gibbs's four mitigating arguments.
 
 Blue
 
 ,
 
 877 F.3d at 516, 519
 
 . In announcing its chosen sentence, the court made no mention of Gibbs's time already served, his family's circumstances, or his assistance to the Government.
 

 The district court's failure to mention Gibbs's family is particularly troubling, as the bulk of Gibbs's mitigation revolved around his family's unique circumstances, such as the fact that the mother of his three small children is deceased. Similarly, the district court uttered not a single word about Gibbs's assistance to Wilmington-area law enforcement with regard to several serious crimes, including a bank robbery and a murder. The fact that the court declined to hear from the law enforcement agent who worked with Gibbs-who was present and available to testify at Gibbs's hearing-exemplifies the court's demonstrated lack of engagement with Gibbs's nonfrivolous mitigating arguments.
 

 Sympathetic to the natural idiosyncrasies of court proceedings, we have recognized that acknowledgment of the parties' arguments may be clear from the context of the court's comments.
 
 See
 

 United States v. Montes-Pineda
 
 ,
 
 445 F.3d 375
 
 , 381 (4th Cir. 2006). For example, appellate courts "may [ ] infer that a sentencing court gave specific attention to a defendant's argument for a downward departure if the sentencing court engage[d] counsel in a discussion about that argument."
 
 Blue
 
 ,
 
 877 F.3d at
 
 521 (citing
 
 Gall
 
 ,
 
 552 U.S. at 54
 
 ,
 
 128 S.Ct. 586
 
 ). But the record contains no contextual clues, such as a conversation with counsel, to suggest that the district court considered Gibbs's arguments. During Gibbs's presentation, the district court asked no questions and made no comments beyond those required to keep the proceedings moving.
 
 Lynn
 
 ,
 
 592 F.3d at 584
 
 . Nor did the court give any indication that it found Gibbs's arguments persuasive or unpersuasive.
 

 Id.
 

 With nowhere else to turn, the majority reads heavily into the court's two-word response-"all right"-and subsequent pause after being asked by Gibbs's counsel to reconsider the 24-month range. The majority takes these two words and the pause to adequately address not one, but three separate arguments.
 
 See
 

 Ante
 
 at 205-06. For the majority, the district court's "brief pause," noted on the hearing transcript, signifies that the court "[gave] the argument[s] thought," as well as "considered and rejected" Gibbs's arguments.
 

 Id.
 

 This conclusion seems tenuous at best-especially because we have held that "an appellate court may not guess at the district court's rationale, searching the record for statements by the Government or defense
 counsel or for any other clues that might explain a sentence."
 
 United States v. Carter
 
 ,
 
 564 F.3d 325
 
 , 329-30 (4th Cir. 2009). Moreover, the terse exchange upon which the majority opinion relies occurred
 
 after
 
 the district court had already handed down Gibbs's sentence. This renders the court's pause even less satisfying, as the parties' arguments are meant to help the court arrive at an appropriate and individualized sentence in the first place.
 
 See
 

 Lynn
 
 ,
 
 592 F.3d at 584-85
 
 ("Indeed, the only time the district court even acknowledged the defendant's arguments was
 
 after
 
 it had imposed sentence; even then, it did so obliquely.").
 

 The district court neither directly nor indirectly addressed Gibbs's nonfrivolous arguments for a downward variance. This amounts to a significant procedural error, which renders Gibbs's sentence procedurally unreasonable.
 

 B.
 

 The court that sentenced Gibbs also failed to adequately explain the sentence it chose. A procedurally sound sentence must provide an adequate explanation for the sentence imposed.
 
 Gall
 
 ,
 
 552 U.S. at 50-51
 
 ,
 
 128 S.Ct. 586
 
 ;
 
 see also
 
 18 U.S.C. 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence[.]"). Sentences that fall within the suggested Guidelines range are no exception.
 
 Montes-Pineda
 
 ,
 
 445 F.3d at 380
 
 . A district court's explanation "need not be lengthy, but the court must offer some 'individualized assessment' justifying the sentence imposed."
 
 Lynn
 
 ,
 
 592 F.3d at
 
 584 (citing
 
 Gall
 
 ,
 
 552 U.S. at 50
 
 ,
 
 128 S.Ct. 586
 
 ;
 
 Carter
 
 ,
 
 564 F.3d at
 
 330 ). Adequate explanation not only ensures individualized sentences, but also "allow[s] for meaningful appellate review" and "helps [the sentencing process] evolve."
 
 Gall
 
 ,
 
 552 U.S. at 50
 
 ,
 
 128 S.Ct. 586
 
 ;
 
 Rita
 
 ,
 
 551 U.S. at 357
 
 ,
 
 127 S.Ct. 2456
 
 .
 

 An adequate explanation is one that "consider[s] the factors outlined in
 
 18 U.S.C. § 3553
 
 (a) and 'articulate[s] the reasons for selecting the particular sentence.' "
 
 United States v. Helton
 
 ,
 
 782 F.3d 148
 
 , 152 (4th Cir. 2015) (quoting
 
 United States v. Green
 
 ,
 
 436 F.3d 449
 
 , 456 (4th Cir. 2006) ). Although a district court "need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence,"
 
 Thompson
 
 ,
 
 595 F.3d at 547
 
 , it must still "provide a statement of reasons for the sentence imposed,"
 
 Moulden
 
 ,
 
 478 F.3d at 657
 
 .
 

 Contrary to common sense, the majority opinion suggests that the sentencing court's mere recitation of Gibbs's criminal history is enough to satisfy this standard.
 
 See
 

 Ante
 
 at 206. But it is hard to imagine how such a description, absent any express reasoning, can be fairly called an "explanation."
 
 See Explanation
 
 , Black's Law Dictionary (10th ed. 2014) (defining "explanation" as the "activity or process of expounding, interpreting, or making something intelligible;" especially "the process of demonstrating by reasoning ... the causal or logical antecedents or conditions of some event or thing to be accounted for"). A court's simple restatement of the matter at hand-i.e., recounting Gibbs's violations of his supervised release-is not the same as an explanation for the sentence imposed.
 

 The notion that Gibbs's criminal history constitutes an adequate explanation seems even more unlikely in the context of the revocation of supervised release. While the Guidelines "base original sentences primarily on the severity of the defendant's criminal conduct and criminal history,"
 
 Crudup
 
 ,
 
 461 F.3d at 437
 
 , the Guidelines explain that revocation sentences "should
 sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."
 
 U.S. Sentencing Guidelines Manual
 
 , ch. 7, pt. A, introductory cmt. 3(b) (U.S. Sentencing Comm'n 2016). Thus, even if a recitation of Gibbs's criminal past somehow comprises an explanation, it at most explains a tangential, and not a primary, issue.
 
 Moulden
 
 ,
 
 478 F.3d at 657
 
 .
 

 Regardless of the relevance of Gibbs's criminal history, § 3553(c) mandates that the sentencing court "state in open court the reasons for its imposition of the particular sentence."
 
 18 U.S.C. § 3553
 
 (c). Adequate explanations should demonstrate that the sentencing judge considered the § 3553(a) factors.
 
 Helton
 
 ,
 
 782 F.3d at 152
 
 . In
 
 Thompson
 
 , we vacated the appellant's revocation sentence because of the district court's failure to adequately explain its reasoning.
 
 595 F.3d at 547
 
 . Nonetheless, even the district court in
 
 Thompson
 
 managed to note that it "could not find that Thompson 'was not a danger to the community.' "
 
 595 F.3d at 549
 
 (Niemeyer, J., dissenting). Similarly, in
 
 Slappy
 
 , we held that the sentencing court failed to adequately explain the appellant's sentence.
 
 872 F.3d at 204
 
 . However, even the inadequate explanation offered by the district court there provided more of an explanation than Gibbs received. Echoing the language of § 3553(a), the district court in
 
 Slappy
 
 stated, "This sentence is imposed to afford adequate deterrence to criminal conduct."
 

 Id.
 

 at 206
 
 . But with Gibbs, the district court did not offer even an
 
 inadequate
 
 explanation for why it chose this particular sentence, let alone the statutory maximum.
 
 See, e.g.
 
 ,
 
 Slappy
 
 ,
 
 872 F.3d at 209
 
 .
 

 By handing down Gibbs's sentence with no rationale for the sentence imposed, the district court did not meet its obligation to adequately explain its chosen sentence. Such a significant procedural error cannot survive our reasonableness review.
 

 * * *
 

 In sum, our precedent overwhelmingly holds that a sentencing court must both respond to the nonfrivolous mitigating arguments of the defendant-be it in the form of a direct response or a demonstrated engagement with counsel-as well as adequately explain its decision with a statement of reasons for choosing the particular sentence imposed. The record from Gibbs's revocation hearing reveals the district court's failure to comport with either procedural requirement. By affirming it, the majority opinion flies in the face of the plain and long-established precedent of both the Fourth Circuit and the Supreme Court.
 

 III.
 

 The majority purports to apply our binding precedent, but in reality it undermines it. In its opinion, the majority claims that revocation sentences falling within the advised Guidelines range are "presumed reasonable."
 
 Ante
 
 at 204 (citing
 
 Webb
 
 ,
 
 738 F.3d at
 
 642 ). This misconstrues the law. While within-Guidelines sentences may be presumed to be
 
 substantively
 
 reasonable, such a presumption does not apply to the
 
 procedural
 
 prong of the reasonableness analysis.
 
 Blue
 
 ,
 
 877 F.3d at
 
 519-20 ;
 
 see
 

 Gall
 
 ,
 
 552 U.S. at 51
 
 ,
 
 128 S.Ct. 586
 
 (permitting appellate courts to apply an optional presumption of reasonableness in their substantive analysis of within-Guidelines sentences). As we have explained before, applying such a presumption would "effectively eliminate the requirement that sentencing courts adequately explain all sentences, even those within the Guidelines, and would be inconsistent with this Court's precedent."
 
 Blue
 
 ,
 
 877 F.3d at 520
 
 .
 

 Moreover, a presumption of reasonableness makes little sense in the context of procedural review. The only reason we may presume that a sentence is substantively reasonable is because there are procedural safeguards in place at the time of sentencing, which assure us that the district court made a carefully reasoned and appropriately individualized decision. Robust procedural requirements-such as those instructing the sentencing court to fully address the parties' arguments and adequately explain its chosen sentence-are precisely what allow for a presumption of substantive reasonableness. To presume that a within-Guidelines sentence is
 
 procedurally
 
 sound is to turn the entire reasonableness analysis on its head.
 

 Even more troubling is that, in searching for a rationale from the district court, the majority transposes its own reasoning where the district court's should be.
 
 Ante
 
 at 205-06. Analysis of a sentence's reasonableness proceeds under an abuse of discretion standard.
 
 Gall,
 

 552 U.S. at 56
 
 ,
 
 128 S.Ct. 586
 
 . Thus, our task, contrary to what the majority opinion implies, is not to describe what
 
 our
 
 reasons would have been had
 
 we
 
 been the ones to sentence Gibbs to two years in prison. Rather, our responsibility is to determine whether the district court adequately explained
 
 its
 
 reasons for sentencing Gibbs, and, by extension, whether Gibbs was sentenced in a fair manner. The abuse of discretion standard underscores the critical need for a requirement of clear explanation from the district court. Such a requirement exists precisely so that we do not risk substituting our own reasoning for that of the sentencing court, which is closer to the facts of the case and thus better able to fashion an appropriate sentence.
 

 In light of the law of this Court, the majority opinion cannot justify the district court's failure to offer Gibbs an adequate explanation. While insisting that the record "amply" demonstrates the district court's consideration,
 
 ante
 
 at 200-01, the majority sets the bar absurdly low by asserting that two words and a brief pause are enough to provide a satisfactory acknowledgement of a defendant's arguments for a downward variance. Such a conclusion renders meaningless the requirement to explain a sentencing decision-a sentencing decision that, lest we forget, amounts to no less than the deprivation of the defendant's liberty.
 

 IV.
 

 At Gibbs's sentencing hearing, the district court gave no indication that it had considered Gibbs's time already served, nor his family's hardship, nor his completed work training, nor his cooperation with the Government's investigations in the Wilmington area-the bases of each of Gibbs's nonfrivolous mitigating arguments. The court also offered no explanation for imposing the particular sentence it chose. Nonetheless, the majority believes the district court fulfilled its congressionally mandated duty to adequately explain its sentence. As such, the majority predicates its decision on little more than its independent belief that Gibbs received the punishment he deserved. Such a position is not only an affront to over a decade of clearly established precedent with regard to sentencing procedure, but also a transgression of our role as a reviewing court.
 

 I respectfully dissent.
 

 Gall v. United States,
 

 552 U.S. 38
 
 , 51,
 
 128 S.Ct. 586
 
 ,
 
 169 L.Ed.2d 445
 
 (2007) (holding that a district court must "adequately explain the chosen sentence");
 
 United States v. Blue
 
 ,
 
 877 F.3d 513
 
 , 518 (4th Cir. 2017) (holding that an adequate explanation requires an individualized assessment that considers the defendant's nonfrivolous arguments for a downward departure);
 
 United States v. Slappy
 
 ,
 
 872 F.3d 202
 
 , 207-08 (4th Cir. 2017) (same);
 
 United States v. Thompson
 
 ,
 
 595 F.3d 544
 
 , 547-48 (4th Cir. 2010) (same);
 
 United States v. Lynn
 
 ,
 
 592 F.3d 572
 
 , 581-82 (4th Cir. 2010) (same);
 
 United States v. Carter
 
 ,
 
 564 F.3d 325
 
 , 328-29 (4th Cir. 2009) (same).