**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4310**

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

     v.

MICHAEL WAYNE LESTER,

          Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Bruce H. Hendricks, District Judge. (7:17-cr-00645-BHH-1)

Argued: October 30, 2020                          Decided: January 15, 2021

Before NIEMEYER and KEENAN, Circuit Judges, and Richard E. MYERS II, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Chief Judge Myers wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**ARGUED:** Jill Eskin Major HaLevi, MEDIATION & LEGAL SERVICES, LLC, Charleston, South Carolina, for Appellant. William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

MYERS, Chief District Judge:

In December 2017, appellant Michael Lester pleaded guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a). The district court sentenced Lester to 360 months' imprisonment, which was both the maximum term of imprisonment allowed by statute and the top end of the advisory range provided by the United States Sentencing Guidelines (the "Guidelines").

On appeal from his criminal judgment, Lester contends that his sentence is procedurally and substantively unreasonable. Specifically, Lester contends that the district court erred by: (1) failing to explain why it had rejected all of his non-frivolous arguments for a downward variance from the Guidelines range; (2) improperly enhancing his sentence under the Guidelines; and (3) imposing a substantively unreasonable sentence.

For the reasons that follow, we affirm.

## I.

Lester had been residing with his brother Mark, Mark's fiancé Krystal, and Krystal's then-three-year-old daughter for an extended period of time in August 2016 when Mark discovered that certain electronic devices in Lester's possession contained child pornography. Mark reported his findings to the Federal Bureau of Investigation (the "FBI"), which obtained the appropriate warrants and seized the devices, among others.[1]

---

[*] Citations to the "J.A." refer to the contents of the joint appendix filed by the parties in this appeal.

[1] The record does not make clear whether Lester's brother Thomas Mark Lester— who testified at the sentencing hearing after Krystal saying that he had contacted the FBI (Continued)

2

A forensic examination of the devices revealed more than 22,000 files suspected of containing child pornography, including hundreds of images and multiple videos of victims that had been identified by the National Center for Missing and Exploited Children, which maintains a database of identified child-pornography victims. A number of the images found on the devices depicted pre-pubescent girls who were naked, bound with rope, and gagged.

Investigators also discovered that the devices contained images of Lester himself. After consulting with Mark and Krystal, the investigators concluded that certain of these images depicted Lester sexually molesting Krystal's daughter while she slept. The images depicted Lester both manipulating the child's genitals with his hand and placing the child's hand upon his own genitals.

Lester was arrested on June 27, 2017. Following his arrest, Lester waived his *Miranda* rights and admitted to investigators both that the devices were his and that he had deliberately sought out and collected child pornography from various sources and stored the pornography on the devices. Lester also admitted that the images of Krystal's daughter were a part of his collection, but denied having produced the images or ever having touched

regarding Lester's devices—is the same brother who was Krystal's fiancé at the time of the offense, and Lester appears to reference another brother in his brief on appeal. [*see* Appellant's Br. 2–3 (referencing "Mark" by name but saying that Krystal's daughter is Lester's "other brother's stepdaughter")] Even if these are two different people, the Court treats them as one in this opinion for simplicity's sake, since it makes no difference to our analysis.

a child in a sexual way. Finally, Lester also admitted that he had taken photographs of teenage girls at stores and shopping malls without their knowledge.

In August 2017, Lester was charged by a two-count indictment with: (1) possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B); and (2) sexual exploitation of a child, a violation of 18 U.S.C. § 2251(a). Defendant pleaded guilty to the 18 U.S.C. § 2251(a) charge in December 2017 without a plea agreement. During his plea hearing, Lester agreed with the prosecutor's proffer that Lester had "entered the room of his brother's . . . stepdaughter and took photographs . . . of the child's genitals." J.A. 81, 85.

The United States Probation Office prepared a presentence-investigation report (the "PSR") in August 2018. The PSR detailed the background set forth above (in more detail than is necessary to recount for purposes of this opinion) and specifically stated that Lester "molested his brother's three-year old stepdaughter" and "took photographs of this molestation" while Lester was "living with his brother for an extended period of time." J.A. 171. In detailing the applicable offense-level computations under the Guidelines, the PSR contemplated: (1) a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(5) because Lester "was a relative of the minor victim when this offense occurred as he was her step-uncle"; and (2) a three-level reduction pursuant to U.S.S.G. § 3E1.1 because Lester had accepted responsibility for the offense by "admitt[ing] to the facts and elements as

4

stated on the record the day of his guilty plea" and expressing remorse for his actions.[2] J.A. 174, 176–77. The PSR then set forth that an 18 U.S.C. § 2251(a) conviction carries a mandatory imprisonment term of 15 years and a maximum term of 30 years and that, based upon Lester's criminal-history and offense-level computations, the Guidelines advised that Lester should be imprisoned for 324 to 360 months.

In October 2018, Lester filed a sentencing memorandum in which he moved the district court for a downward variance from the Guidelines range pursuant to 18 U.S.C. § 3553(a). Within his memorandum, Lester argued that a downward variance was warranted because of, *inter alia*: (1) Lester's need for treatment/rehabilitation and education/training; (2) the need for the court to promote respect for the law; (3) Lester's age and the prospect that he would die in prison; and (4) the potential for the Guidelines enhancements applicable to criminals convicted of sexually exploiting children to result in a Guidelines range that was "too severe." J.A. 102–09. Notably, Lester's sentencing memorandum did not raise any objections to the facts stated in the PSR or to the Guidelines provisions that the PSR contemplated as applicable, including U.S.S.G. § 2G2.1(b)(5). Regarding U.S.S.G. § 2G2.1(b)(5), Lester specifically represented that he had "produced pornographic images of his brother's 3-year old step-daughter" within his memorandum. J.A. 104–05.

---

[2] The PSR also contemplated various other offense-level adjustments that are not relevant to this appeal.

5

The government responded with its own sentencing memorandum several days later. Within its memorandum, the government stated that the PSR was "accurate[]" and that "[t]he Government believes that a Guidelines sentence, a sentence complying with the congressionally mandated minimum sentence, or another appropriate sentence fashioned by the Court's good judgement [sic] and discretion" would be warranted. J.A. 110.

Lester's sentencing hearing took place on October 22, 2018. At the outset, Lester's counsel confirmed that he had discussed the PSR with Lester and that Lester had no objections to the PSR at that time, and the district court accordingly adopted the PSR's findings, conclusions, and Guidelines calculations. Lester's counsel then reiterated certain of the arguments made within Lester's sentencing memorandum, including that: (1) Lester would be 60 years old by the time he would finish the mandatory minimum sentence; and (2) the Guidelines enhancements were "overbearing." J.A. 115–19. Lester's counsel also referenced the "step-daughter" enhancement while making his argument, without arguing that U.S.S.G. § 2G2.1(b)(5) was inapplicable. J.A. 118.

Lester's mother Doris, Krystal, and Mark then testified on Lester's behalf, each asking the court for leniency. Doris said: "I'm 62 years old. If he gets 15 years, I might not even live to see him come out." J.A. 120. Krystal stated her belief that Lester is "a great guy" and noted that "[a]t the time [Lester] was living with us, me and [Mark] was [sic] not married." J.A. 121–22. Lester's counsel did not raise Mark and Krystal's marital status as an issue at this point in the hearing, either. Mark then testified, stating that the 15-year mandatory minimum was too harsh. Finally, Lester allocuted, accepting responsibility for his actions and stating that "I'm afraid that if I do get 15 or more years,

6

that there's nobody going to be left, even if I'm still alive at that age, because cancer does run in our family." J.A. 124.

Throughout their testimony, Judge Hendricks engaged the witnesses in colloquy, thanking them for their testimony and expressing sympathy for the hardships that they faced as a result of Lester's conduct. Once Lester's counsel indicated that there was no further testimony that Lester wanted her to consider, Judge Hendricks stated her belief that "[t]his is really a tough case . . . [Lester] seems to genuinely love his family. And they seem to, despite everything, genuinely love him and forgive him. So it's a really hard situation." J.A. 125. She then recessed the court "to look everything over." J.A. 125.

When court reconvened, Judge Hendricks denied Lester's motion for a downward variance. She noted that, in making her decision, she had considered: (1) the parties' arguments; (2) the PSR's findings, conclusions, and Guidelines calculations, specifically stating that she considered the Guidelines to be "solid and well written" and noting again that the parties had not objected to the PSR; and (3) the testimony given by Lester and his family members. J.A. 126–27. In recounting the offense conduct described by the PSR for the record, Judge Hendricks characterized Krystal's daughter as Lester's brother's "step-daughter" multiple times, and Lester's counsel did not object to the court's characterizations at any point. J.A. 127. Reiterating that she felt that it was "a very difficult case[,]" Judge Hendricks then found that Lester "is a danger to the community . . . [including] any children who might be in proximity to him[,]" in light of: (1) the disturbing child pornography found in Lester's possession; (2) the "very heinous offense"; and (3) Lester's surreptitious photography of young girls as described in the PSR. J.A. 128–

7

29. She accordingly concluded that "there are no condition[s] or combination of conditions that could provide for the community's safety, which the Court has a duty to protect" and, expressly noting that she had considered both the Guidelines and 18 U.S.C. § 3553(a), sentenced Lester to 360 months' imprisonment. J.A. 129–30. After pronouncing Lester's sentence in full, Judge Hendricks finally added:

> I do believe that I've calculated the advisory guideline range properly and that I've addressed all the points raised. But if it's somehow later determined that I hadn't, I will say for the record now I would have imposed the same sentence as an alternate variant sentence in light of all the [18 U.S.C. §] 3553(a) factors and in light of the totality of the circumstances of this case.

J.A. 133.

Judgment was entered on November 1, 2018. Following an unsuccessful motion seeking reconsideration of the sentence and a successful motion to reinstate his right to appeal, Lester timely appealed from the judgment on May 1, 2019.

## II.

"[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Gall v. United States*, 552 U.S. 38, 46 (2007). In reviewing a sentence, the appellate court first determines whether "the district court committed [] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.]" *Id.* at 51. This Court has said that: (1) "if a party repeats on appeal a claim of procedural sentencing error like [the sentencing judge's failure to adequately explain the sentence], which [the party] has made before the district court, we

8

review for abuse of discretion" and "[i]f we find such abuse, we reverse unless we conclude that the error was harmless"; and (2) "the rigorous plain-error standard applies to unpreserved claims of procedural sentencing error." *United States v. Lynn*, 592 F.3d 572, 576–77 (4th Cir. 2010).

If convinced that there was no significant procedural error, the appellate court then "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51.

## III.

Lester first contends that Judge Hendricks committed procedural error by failing to adequately explain why she had rejected all of his non-frivolous arguments for a shorter sentence. Specifically, Lester argues that he must be resentenced because Judge Hendricks failed to address his arguments that a downward variance was warranted because of: (1) Lester's need for treatment, education, and rehabilitation; (2) the court's need to provide just punishment and promote respect for the law; (3) Lester's age; and (4) the potential unreasonableness of the sentencing enhancements set forth by U.S.S.G. § 2G2.1.

18 U.S.C. § 3553(c) requires a sentencing judge to state his or her reasons for imposing a particular sentence in open court. In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court said:

> Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust.
>
> That said, we cannot read [18 U.S.C. § 3553(c)] (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or

9

length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Id.* at 356. All that 18 U.S.C. § 3553(c) requires, the Court said, is for the sentencing judge to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* The Court also noted that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Id.*

> This Court has described the statement-of-reasons requirement as follows:

> District courts are obligated to explain their sentences, whether those sentences are within or beyond the Guidelines range, although they should especially explain sentences outside this range. Of course, a court need not robotically tick through [18 U.S.C.] § 3553(a)'s every subsection. However, a district court's explanation must be elaborate enough to allow an appellate court to effectively review the reasonableness of the sentence. In particular, we believe that a district court's explanation should provide some indication (1) that the court considered the § 3553(a) factors with respect to the particular defendant; and (2) that it has also considered the potentially meritorious arguments raised by both parties about sentencing.

*United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006) (internal quotation marks, brackets, and citations omitted). More recently, this Court rephrased the second consideration above, stating that "[u]nder the law of this circuit a district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 206 (2019). Finally, it is well-established that:

in determining whether there has been an adequate explanation, we do not evaluate a court's sentencing statements in a vacuum. The context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the [18 U.S.C.] § 3553(a) factors and whether it did so properly.

*Montes-Pineda*, 445 F.3d at 381.

Lester first argues that Judge Hendricks committed significant procedural error because "there was no discussion of or recommendations for specific treatment, education or other rehabilitative programs while incarcerated." Appellant's Br. 9. However, appellate courts lack jurisdiction to review a sentencing judge's decision regarding whether to make such recommendations, because a district court's recommendations to the Federal Bureau of Prisons (the "BOP") are not binding on the BOP and are therefore neither a part of a sentence nor appealable. *United States v. Ceballos*, 671 F.3d 852, 855–56 (9th Cir. 2011) ("a district court's recommendation to the Bureau of Prisons is just that—a recommendation. It is not part of the sentence imposed by the district court, nor is it a final order from which an appeal lies."), *cert. denied*, 566 U.S. 1030 (2012); *see Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate. A sentencing court can *recommend* that the BOP place an offender in a particular facility or program. But decisionmaking authority rests with the BOP." (citations omitted)). Lester's first argument is accordingly dismissed.

Second, Lester claims that Judge Hendricks "failed to even address the requests made by either the mother of the girl that Mr. Lester molested, or the man who brought the

11

matter to the attention of law enforcement"—i.e., Krystal and Mark—and accordingly argues that Judge Hendricks failed to promote respect for the law because "the victims whose wishes were ignored will be less likely to report criminal activity to authorities in the future." Appellant's Br. 9–10. As a threshold matter, we find it improbable that victims of crime are dissuaded from contacting law enforcement by knowledge that judges might sentence their transgressors within statutory dictates. Further, as a matter of procedure, sentencing judges are required to address or consider "the potentially meritorious *arguments* raised by both *parties* about sentencing[,]" *Montes-Pineda*, 445 F.3d at 380 (emphasis added), but are not required to address or consider requests made by nonparties like Krystal and Mark. Regardless, the transcript of Lester's sentencing hearing demonstrates that Judge Hendricks: (1) engaged in colloquy with both Krystal and Mark and expressed sympathy for what they had endured as a result of Lester's conduct; (2) stated on the record that she understood Krystal and Mark "to, despite everything, genuinely love [Lester] and forgive him"; and (3) recessed to ponder the appropriate sentence, which she said Lester's family members' testimony had made "really tough" to determine; before (4) ultimately pronouncing Lester's sentence and stating her reasons for the sentence, as discussed more fully below in Section V. J.A. 121–35. Thus, even assuming *arguendo* that she was required to address or consider Krystal and Mark's testimony: (1) Judge Hendricks's colloquy with Krystal and Mark and acknowledgement that she understood them to love and have forgiven Lester—which made her decision "tough"—demonstrate that Judge Hendricks did in fact address or consider the testimony; and (2) her stated rationale for the sentence provided a sufficient explanation for why she

12

found that a 30-year sentence was appropriate in spite of the testimony. This Court has said that "[w]e will not vacate [a] sentence simply because the court did not spell out what the context of its explanation made patently obvious: namely, that a shorter prison term was inappropriate" under the circumstances. *Montes-Pineda*, 445 F.3d at 381. Under these circumstances, the fact that Judge Hendricks determined that Krystal and Mark's testimony did not compel a shorter sentence is patently obvious, and Lester's second argument therefore also fails to establish significant procedural error.

Third, Lester argues within his appellate brief that: (1) he is 45 years old; (2) criminals have a decreased likelihood of recidivism as they age; and (3) Judge Hendricks "failed to mention Mr. Lester's age[.]" Appellant's Br. 11–12. And it is true both that Lester mentioned his age within his sentencing memorandum and at the sentencing hearing through counsel and that Judge Hendricks did not specifically mention Lester's age when pronouncing his sentence.

But while this Court recently held that an argument regarding a criminal defendant's age and the statistical correlation between age and the likelihood of recidivism is a non-frivolous argument that district courts must address or consider when the argument is properly raised, *see United States v. Webb*, 965 F.3d 262, 270 (4th Cir. 2020), the Court has also made clear that "[t]o preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal." *United States v. Awni Shauaib Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014); *see United States v. Lavabit, LLC (In re Under Seal)*, 749 F.3d 276, 287 (4th Cir. 2014) ("Arguments raised in a trial court must be specific and in line with those raised on appeal."). Lester's appellate brief does not direct the

13

Court's attention to anywhere that Lester raised an argument regarding the correlation between age and the likelihood of recidivism below, and a careful review of the record convinces us that this argument is being raised for the first time on appeal.

Indeed, Lester's sentencing memorandum did not mention Lester's age within its section concerning the court's need to protect the public from further crimes, but instead argued in its conclusion that "Mr. Lester would be in his 70s upon release from imprisonment if sentenced within the guideline range[,]" rendering such a sentence "in essence[] a life sentence." J.A. 107–08. Similarly, the transcript of Lester's sentencing hearing demonstrates only that: (1) Lester's counsel argued that the risk of Lester "damaging the community . . . when he gets out" (at age 60, after serving a minimum sentence) could be mitigated by ordering supervised release; and (2) Lester raised his age during his allocution in expressing his fear of not completing his sentence before he or his family members died. J.A. 116, 123–24. And finally—although it is not relevant to the question of whether there was procedural error at Lester's sentencing—Lester's subsequent motion seeking reconsideration of the sentence asked for a reduction thereto not because Lester would have a decreased likelihood of recidivism by virtue of his age, but because 30 years "could easily amount to a life sentence based upon the actuarial tables of a male at the age of 45 years" and a shorter sentence would give him "some opportunity to have a relationship with his four children[.]" J.A. 147.

Because Lester did not make any arguments regarding the correlation between his age and the likelihood of recidivism below, this argument is raised for the first time on appeal, and is accordingly subject to "the rigorous plain-error standard appli[cable] to

14

unpreserved claims of procedural sentencing error[.]" *Lynn*, 592 F.3d at 577. "In order to satisfy the plain error standard [a defendant] must show: (1) an error was made; (2) the error is plain; and (3) the error affects substantial rights." *United States v. Massenburg*, 564 F.3d 337, 342–43 (4th Cir. 2009). An error is "plain" if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). "Th[e plain-error] standard is satisfied when the settled law of the Supreme Court or this circuit establishes that an error has occurred." *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996) (internal quotation marks and citation omitted). And even where plain error is established, this Court will only exercise its discretion to correct the error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Massenburg*, 564 F.3d at 343 (internal quotation marks and citation omitted).

Applying this standard, we conclude that Judge Hendricks's failure to mention Lester's age in light of studies not presented to her that indicate that older criminals may be less likely to recidivate did not amount to error under "the settled law of the Supreme Court or this circuit[.]" *Neal*, 101 F.3d at 998; *Gall*, 552 U.S. at 54 ("it was not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative"). We therefore reject Lester's recidivism argument.

The only age-based argument that Lester preserved for appeal was, as described above, that he is too old to serve a significant sentence and to see his family again on the other side. To the extent that Lester is also arguing that Judge Hendricks abused her discretion by failing to expressly address the possibility that he or his family members might die while he is in prison, we reject that argument. It is always possible that a prisoner

15

or the prisoner's loved ones might die while the prisoner is serving his or her sentence, regardless of the length of the sentence imposed. For that reason, to hold that a sentencing judge's failure to expressly acknowledge such possibilities is a significant procedural error requiring resentencing would result in the vacation of innumerable otherwise-lawful sentences for the judge's failure to state the obvious. Because we assume that every sentencing judge is aware of human mortality, we hold that the possibility that the criminal being sentenced (or anyone else) might die while the criminal is in prison is inevitably "consider[ed]" within the meaning of *Ross* by the sentencing judge in every case, and that such considerations need not be expressly mentioned on the record in order for a sentence to withstand appellate scrutiny. Lester's preserved age-based argument accordingly fails as well.

Finally, Lester argues that Judge Hendricks abused her discretion by giving Lester the maximum Guidelines-range sentence without expressly addressing Lester's counsel's argument that U.S.S.G. § 2G2.1 can be unreasonably punitive to criminals convicted of sexually exploiting children. As mentioned above, "we do not evaluate a court's sentencing statements in a vacuum[,]" but pay attention to the "context surrounding a district court's explanation" in reviewing whether non-frivolous arguments are addressed or considered by a sentencing judge. *Montes-Pineda*, 445 F.3d at 381. The transcript of Lester's sentencing hearing demonstrates that, after noting that she had "read and heard defense counsel's arguments[,]" Judge Hendricks: (1) adopted the unobjected-to Guidelines provisions contemplated by the PSR and expressed her view that those provisions "appear to be solid and well written"; (2) noted "[e]xplicitly and in

16

particular" that she had reviewed the portions of the PSR describing the unobjected-to U.S.S.G. § 2G2.1 enhancements; and then (3) discussed the unobjected-to facts relevant to the enhancements before pronouncing Lester's sentence. J.A. 126–29. While she might not have expressly addressed Lester's policy argument as directly as she could have, we conclude that the context makes clear that she considered the argument and rejected it.

We accordingly reject Lester's final failure-to-explain argument, and conclude that none of Lester's failure-to-explain arguments raise significant procedural error.

**IV.**

Lester next argues that Judge Hendricks committed significant procedural error by improperly applying the sentence enhancement set forth by U.S.S.G. § 2G2.1(b)(5). Lester concedes that he did not object to this enhancement below, but argues that the enhancement was plain error because: (1) U.S.S.G. § 2G2.1(b)(5) "requires proof of a familial or caretaking relationship between the defendant and the victim"; (2) Krystal testified that she and Mark were not married at the time that Lester molested her daughter; and (3) "[t]he actual relationship between Mr. Lester and the victim in this case was never discussed or examined" by the court. Appellant's Br. 18–21.

U.S.S.G. § 2G2.1(b)(5) contemplates a two-offense-level increase where a defendant being sentenced for violating 18 U.S.C. § 2251(a) "was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant[.]" The explanatory notes following U.S.S.G. § 2G2.1 further describe this sentencing enhancement as follows:

17

[U.S.S.G. § 2G2.1](b)(5) is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this adjustment, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship.

U.S.S.G. § 2G2.1 Application Note 5(A).

Lester's argument focuses upon Mark and Krystal's legal status at the time of the offense, as it appears undisputed that the couple was not legally married until after the offense took place. And it is true that the PSR says that the enhancement is applicable because Lester was Krystal's daughter's "step-uncle." J.A. 176.

But the explanatory notes quoted above make clear that "the legal status of the defendant-minor relationship" is not dispositive. U.S.S.G. § 2G2.1 Application Note 5(A). What matters is "the actual relationship" between Lester and Krystal's daughter, i.e., whether she was "entrusted to" Lester at the time that he molested her such that she was in Lester's "custody, care, or supervisory control" within the meaning of U.S.S.G. § 2G2.1(b)(5). *Id.* The question for our consideration is therefore whether Lester has met his burden of establishing that it was plain error for Judge Hendricks to conclude that Krystal's daughter had been "entrusted to" Lester at the time of the offense, in light of the facts before her and the "broad application" that the United States Sentencing Commission (the "Sentencing Commission") has said that U.S.S.G. § 2G2.1(b)(5) should be given. *Id.*

Lester has not met his burden. The facts before Judge Hendricks included that, for an extended period leading up to and including the time of the offense, Mark and Krystal

18

allowed Lester to live under the same roof with them and Krystal's three-year-old daughter, which according to Lester himself gave him "easy access" to the child's bedroom while she slept. Appellant's Br. 15. This fact was set forth within the unobjected-to PSR, represented as true by Lester within his sentencing memorandum, and expressly relied upon by Judge Hendricks in explaining Lester's sentence. Lester has not directed the Court's attention to any authority tending to support the proposition that a three-year-old child's mother who allows an individual to live with easy access to her child cannot be reasonably determined to have "entrusted [the child] to" the individual, or left the child in the "custody, care, or supervisory control" of the individual, during the period of the cohabitation. Because he has not raised such authority, and because a "plain" error must be "obvious, rather than subject to reasonable dispute[,]" *Puckett*, 556 U.S. at 135, under "the settled law of the Supreme Court or this circuit[,]" *Neal*, 101 F.3d at 998, we conclude that Lester has failed to establish that Judge Hendricks plainly erred by applying U.S.S.G. § 2G2.1(b)(5).

We accordingly reject Lester's U.S.S.G. § 2G2.1(b)(5) argument and conclude that Lester's sentence is free from significant procedural error.

## V.

Because we conclude that there was no significant procedural error, we turn to Lester's argument that his sentence is substantively unreasonable. The Supreme Court has said that substantive-reasonableness review:

> take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a

19

presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall*, 552 U.S. at 51 (citation omitted). This Court has "held repeatedly . . . [that] a sentence within a properly calculated advisory Guidelines range is presumptively reasonable" and that a "defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the [18 U.S.C.] § 3553(a) factors." *Montes-Pineda*, 445 F.3d at 379 (quotation marks and citation omitted).

Because Lester was sentenced within the Guidelines range set forth by the PSR, and we conclude that Lester has failed to establish that the range was calculated in error, *see supra* Section IV, Lester's sentence is presumptively reasonable. In seeking to rebut the presumption of reasonableness, Lester argues that: (1) he did not have a significant prior criminal record; (2) he did not in the end receive any reduction to his sentence for accepting responsibility and pleading guilty; and (3) in essence, the conduct cited by Judge Hendricks in explaining his sentence was treated as if it were worse than it actually was.

The first two arguments fail because the Guidelines range applied by Judge Hendricks subsumed both Lester's criminal history and the fact that he had accepted responsibility for and pleaded guilty to the offense, and Lester has argued neither below nor on appeal that either his criminal-history score or acceptance-of-responsibility reduction were incorrectly calculated or otherwise erroneous. Because we do not conclude that the Guidelines are themselves *per se* unreasonable, we reject these arguments. *See*

20

*Ross*, 307 F. App'x at 729 ("the guidelines are 'the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions'" (quoting *Gall*, 552 U.S. at 46)).

Regarding Lester's third argument, even accepting as true that: (1) Lester did not molest any children other than Krystal's daughter; (2) Lester did not distribute to others the photographs of Krystal's daughter that he took; and (3) the teenage girls at the mall whom Lester photographed were clothed and otherwise safe, these facts fail to rebut the presumptive reasonableness of Lester's Guidelines-range sentence. A holistic review of the record demonstrates that Judge Hendricks: (1) considered the 18 U.S.C. § 3553(a) factors in light of Lester's arguments for a downward variance set forth within Lester's sentencing memorandum and raised at the sentencing hearing; (2) listened and responded to Lester's family members' testimony and Lester's allocution; (3) took a recess to ponder the appropriate sentence in what she considered a "really tough case"; and finally (4) explained in detail her rationale for denying Lester's motion for a variance and imposing a sentence at the high end of, but within, the applicable Guidelines range. J.A. 111–35. Judge Hendricks's expressed rationale was that Lester "is a danger to the community" in light of his: (1) admitted collection of a large volume of child pornography—including images of pre-pubescent girls who were naked, bound with rope, and gagged—the procurement of which "feeds the market for other acts to be perpetrated on innocent babies"; (2) admitted production of child pornography, in that he photographed the "very heinous" molestation of a three-year-old girl; and (3) admitted photography of young girls without their knowledge, which Judge Hendricks found demonstrated that

21

Lester was willing to "actually act on" his dangerous impulses.  J.A. 126–30.  Such facts clearly provide a reasonable basis to find that Lester "is a danger to the community . . . [including] any children who might be in proximity to him[,]" and to conclude that "there are no condition[s] or combination of conditions that could provide for the community's safety, which the Court has a duty to protect."  J.A. 129–30.

Federal statute specifically sets forth that a criminal sentence must "protect the public from further crimes of the defendant[,]" 18 U.S.C. § 3553(a)(2)(C), and a federal sentencing judge is given "broad discretion in imposing a sentence within a statutory range."  *United States v. Booker*, 543 U.S. 220, 233 (2005).  While Lester might have reasonably received a shorter sentence, as the Supreme Court has made clear, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *Gall*, 552 U.S. at 51.  Appellate courts reviewing the substantive reasonableness of criminal sentences apply the deferential abuse-of-discretion standard in recognition that:

> [t]he sentencing judge is in a superior position to find facts and judge their import under [18 U.S.C.] § 3553(a) in the individual case.  The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record . . . [and] has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court.

*Id.* at 51–52 (quotation marks and citations omitted).  According the deference due to Judge Hendricks's superior position, and in light of the totality of the circumstances described above, we conclude that Judge Hendricks's imposition of a Guidelines-range sentence— which "reflects the fact that . . . *both* the sentencing judge and the Sentencing Commission

22

. . . reached the same conclusion as to the proper sentence in the particular case[, a] double determination significantly increas[ing] the likelihood that the sentence is a reasonable one[,]" *Rita*, 551 U.S. at 347—was not unreasonable.

We therefore reject Lester's final argument and conclude that Lester's sentence is free from substantive error.

## VI.

Because it is free from significant procedural and substantive error, the judgment is

*AFFIRMED.*