**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4654

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

EDIN ANAEL SOLIS-RODRIGUEZ,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Senior District Judge. (3:21-cr-00053-FDW-DCK-1)

Argued: March 19, 2025                        Decided: July 23, 2025

Before QUATTLEBAUM and HEYTENS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Heytens joined. Judge Traxler joined except as to Part II.B and wrote an opinion concurring in the judgment.

**ARGUED:** Ashley Ali Askari, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** John G. Baker, Federal Public Defender, Ann L. Hester, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina, for Appellant. Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES

2

ATTORNEY, Charlotte, North Carolina, for Appellee.

———————————

QUATTLEBAUM, Circuit Judge:

Edin Anael Solis-Rodriguez twice brandished firearms in local restaurants during a sixteen-month span. The second time, he shot a patron at point-blank range. Because Solis-Rodriguez had entered the United States illegally, the government charged him with two counts of possessing a firearm as an illegal alien. *See* 18 U.S.C. § 922(g)(5).

Solis-Rodriguez pled guilty. He now challenges his Federal Rule of Criminal Procedure 11 colloquy as plainly erroneous and his sentence as procedurally unreasonable. We reject his challenges. Even assuming a plain error at the Rule 11 colloquy, it did not affect Solis-Rodriguez's substantial rights. And the district court reasonably considered Solis-Rodriguez's mitigating arguments before explaining why it issued the sentence. Thus, we affirm.

## I.

Solis-Rodriguez grew up in Honduras. Having unlawfully entered the United States, he was deported in 2018. He then reentered—again unlawfully.

In August 2020, Solis-Rodriguez entered a Charlotte, North Carolina restaurant with a Hi-Point .45 caliber pistol visibly tucked in the back of his pants. Scared staff called the police. When police officers arrived, they asked Solis-Rodriguez if he had a gun or spoke English. He answered "no" to both questions. The officers, with his consent, then frisked Solis-Rodriguez and found the loaded Hi-Point pistol.

In November 2021, Solis-Rodriguez and Chris Silva got into an argument at The Taco Bar restaurant, also in Charlotte, North Carolina. According to Solis-Rodriguez, Silva threatened to kill him and his family. Silva and Solis-Rodriguez went outside, and Silva

spoke with a security guard. At the same time, Solis-Rodriguez got a pistol from his car. He began arguing with Silva again, pulled out his pistol and shot him at point-blank range. The bullets struck Silva's chest and left hand. He went into a four-day coma and required several surgeries.

Police officers collected nine-millimeter shell casings at the shooting scene. Two days later, they arrested Solis-Rodriguez at his apartment. Solis-Rodriguez admitted to the police that he shot Silva but claimed he did so only in response to Silva's threats. Police officers found a nine-millimeter pistol in Solis-Rodriguez's apartment that they later determined matched the shell casings found at the crime scene, along with the clothes Solis-Rodriguez wore the night of the November shooting. Solis-Rodriguez admitted he had used that pistol. He also admitted to entering the country unlawfully.

A grand jury indicted Solis-Rodriguez on two counts of possessing a firearm as an illegal alien under 18 U.S.C. § 922(g)(5)—one count for the August 2020 incident and another for the November 2021 shooting.[1] After Solis-Rodriguez agreed to plead guilty, the government filed a written factual basis, which Solis-Rodriguez did not dispute.

A federal magistrate judge conducted a plea hearing.[2] Solis-Rodriguez received assistance from a Spanish-language interpreter. The judge explained that Solis-Rodriguez

---

[1] Solis-Rodriguez told the police officers about a third incident that occurred in October 2021. He brought a gun to a party in someone's yard, and when a fight broke out, he fired the gun into the ground to break it up. According to him, the bullet ricocheted and hit someone in the leg. The government did not charge Solis-Rodriguez for the October 2021 party incident.

[2] Solis-Rodriguez consented to proceed before a magistrate judge. *See* J.A. 17.

4

faced two counts, and "[e]ach of these counts alleges the same offense, possession of a firearm by an illegal alien. The difference between the counts is that they occurred on different dates." J.A. 18. The judge further clarified that "[e]ach of these offenses is a violation of Title 18, United States Code, Section 922(g)(5). Each of these offenses alleges possession of a firearm by an illegal alien." J.A. 19. He then asked the prosecutor "what's the maximum penalty for that offense?" *Id.* The prosecutor responded, "[t]he maximum term of imprisonment [is] 10 years, a $250,000 fine, and up to three years of supervised release."[3] *Id.* The prosecutor mentioned that the Armed Career Criminal Act might apply, but the magistrate judge promptly determined it did not. *Id.* Then the magistrate judge stated "[i]t sounds like the maximum penalty for these offenses would be 10 years imprisonment, $250,000 fine, or both, and period of supervised release." J.A. 20. Solis-Rodriguez's counsel agreed with that statement. Then, Solis-Rodriguez pled guilty to both counts.

A probation officer prepared a presentence report ("PSR") following the guilty plea. To determine his offense level, the PSR applied a 4-level enhancement for Solis-Rodriguez's use of a firearm in connection with attempted murder. *See* U.S.S.G. § 2K2.1(b)(6)(B) (2018). The base offense level plus the enhancement resulted in an offense level of 37. The PSR then subtracted 3 levels for acceptance of responsibility, for

---

[3] At the time of Solis-Rodriguez's plea, § 922(g)(5) carried a statutory maximum of 10 years' imprisonment. *See* 18 U.S.C. § 924(a)(2) (2018). Congress has since amended the statute to provide up to 15 years' imprisonment, *see* 18 U.S.C. § 924(a)(8) (2022), but the 10-year maximum applies to Solis-Rodriguez's case.

a total offense level of 34. Solis-Rodriguez had 1 criminal history point for entering the country illegally. Combining the total offense level with his criminal history point, the guidelines range for Solis-Rodriguez's potential imprisonment term was 151 to 188 months. The PSR also stated that *each* § 922(g)(5) count carried a maximum term of 10 years' imprisonment. Finally, the PSR flagged that under U.S.S.G. § 5G1.2(d) (2018), the sentences must run consecutively up and until the combined sentences reach the total maximum punishment—here, 20 years' imprisonment.

Solis-Rodriguez raised a couple of objections to the PSR. He argued that the attempted murder enhancement should not apply because he shot Silva in self-defense. And he argued that the two § 922(g)(5) offenses were really just one continuing offense with a maximum penalty of 10 years' imprisonment.

At the sentencing hearing, the district court first accepted Solis-Rodriguez's guilty plea. The court then rejected Solis-Rodriguez's "continuing offense" argument. It explained that the use of two different guns in the two incidents meant there were "two separate counts of conviction," allowing for stacked sentences. J.A. 91. And the court rejected Solis-Rodriguez's objection to the murder enhancement because Solis-Rodriguez acted unreasonably by using violence and not retreating. So, it adopted the PSR's guidelines range of 151 to 188 months' imprisonment.

Next, the court proceeded with Solis-Rodriguez's allocution. Solis-Rodriguez expressed remorse during his allocution and requested to be placed close to his family in Charlotte. The district court agreed to make such a recommendation.

6

Then, the court asked for arguments about the appropriate sentence. Solis-Rodriguez's counsel argued for a 151-month sentence. He pointed out that "Mr. Solis-Rodriguez stands before the Court a very young man." J.A. 108. He was 22 years old at the time. And counsel noted Solis-Rodriguez's lack of any violent or weapons-related criminal history. The government then responded by arguing for a 180-month sentence. It recounted the details of the two charged incidents as well as the October 2021 party incident. It described the calculated nature of the November 2021 shooting. And it argued Solis-Rodriguez "thinks violence is the answer to his problems." J.A. 110.

The district court first determined the standard conditions of supervision "are correct and appropriate to be imposed in this case as to this defendant" after reviewing the facts of the case. J.A. 112. It then addressed Solis-Rodriguez as it "consider[ed] a series of sentencing factors that were enacted by Congress that guide courts in fashioning sentences that are sufficient but not greater than necessary to accomplish the goals of sentencing."[4] J.A. 114. The court emphasized it "has considered all of the sentencing factors. Whether it mentions a sentencing factor or not, I want it clear on the record that the Court has considered all of the sentencing factors." *Id.*

---

[4] Congress enacted these factors in 18 U.S.C. § 3553(a). They include the (1) "nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to reflect the seriousness of the offense, afford adequate deterrence and protect the public; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range [under the guidelines]"; (5) "any pertinent policy statement" (6) "the need to avoid unwarranted sentence disparities"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

7

The court then "highlighted some [factors] that it finds particularly important." J.A. 115. It discussed the nature and circumstances of the offense as "very, very disturbing." J.A. 114. The district judge, describing himself "[a]s a father like you," acknowledged Solis-Rodriguez's frustration with Silva's threats. *Id.* But he pointed out that violence was not the proper solution. The court also highlighted a need to specifically deter Solis-Rodriguez from further criminal conduct before flagging the importance of general deterrence. And finally, it "need[ed] to promote respect for the law. And the law is the mechanism for resolving disputes, not shooting somebody in their chest and in their arm." J.A. 115. The court wrapped up by reiterating it had considered all the sentencing factors.

The court imposed a 120-month sentence on Count 1 and a 60-month sentence on Count 2, running consecutively for a total of 180 months' imprisonment. After explaining the sentence, the district court asked counsel "if there's any legal reason why this sentence as proposed should not be imposed?" J.A. 121. Solis-Rodriguez's counsel responded, "[j]ust the issues that we previously raised that the Court overruled." *Id.*

## II.

Solis-Rodriguez now appeals, alleging errors at both the Rule 11 colloquy and sentencing hearing.[5] In particular, he argues that the magistrate judge erred under Rule 11 by never clarifying that *each* § 922(g)(5) count carried up to 10 years' imprisonment. So, he wants his guilty plea vacated. And he alleges his sentence is procedurally unreasonable

---

[5] We have jurisdiction of this appeal under 28 U.S.C. § 1291.

because the district court failed to properly consider his nonfrivolous mitigating arguments about remorse, age and lack of criminal history. For that, he wants a new sentencing.

We reject both challenges. First, we assume the magistrate judge erred "plainly" during the Rule 11 colloquy. But Solis-Rodriguez has failed to demonstrate that error affected his substantial rights. Second, the district court sufficiently considered Solis-Rodriguez's nonfrivolous mitigating arguments and explained the sentence. So, the sentence was procedurally reasonable.

## A. Plea Colloquy

"Before accepting a guilty plea, a trial court, through colloquy with the defendant, must ensure that the defendant understands the nature of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty, and the various rights the defendant is relinquishing by pleading guilty." *United States v. Williams*, 811 F.3d 621, 622 (4th Cir. 2016) (citing Fed. R. Crim. P. 11(b)). Solis-Rodriguez argues the district court erred by stating he faced a combined maximum penalty of 10 years' imprisonment when he really faced a maximum penalty of 20 years—10 years on *each* of the two § 922(g)(5) counts.

"Because [Solis-Rodriguez] neither objected to the judge's [colloquy], nor made an attempt to withdraw his guilty plea, we consider his appellate argument under the rigorous plain error standard." *United States v. Sanya*, 774 F.3d 812, 815 (4th Cir. 2014). To succeed on plain-error review, Solis-Rodriguez must show (1) an error occurred; (2) the error was plain or obvious; and (3) the error affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). Even if Solis-Rodriguez makes these showings, we will exercise

9

our discretion to correct the error only if a refusal to do so would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

Federal Rule of Criminal Procedure 11(b)(1)(H) requires the court to inform the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." The magistrate judge first mentioned that Solis-Rodriguez faced two counts under § 922(g)(5). The magistrate judge asked the prosecutor to explain the maximum penalty, and the prosecutor responded, "[t]he maximum term of imprisonment [is] 10 years." J.A. 19. Shortly after, the magistrate judge described "the maximum penalty for these offenses [as] 10 years imprisonment." J.A. 20. According to Solis-Rodriguez, the magistrate judge plainly erred by failing to clarify *each* count carried a maximum 10-year penalty.

Considering this argument, we assume, without deciding, that the magistrate judge erred in not informing Solis-Rodriguez that each individual offense carried up to 10 years' imprisonment, for a maximum penalty of 20 years. We also assume that his error in doing so was obvious under existing law. Even so, the error did not affect Solis-Rodriguez's substantial rights. To demonstrate that a Rule 11 error affected his substantial rights, Solis-Rodriguez "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

In several prior § 922(g) cases, we addressed a similar context where a court failed to mention the potential applicability of the Armed Career Criminal Act at the plea colloquy. In *United States v. Hairston*, at the time the defendant pled guilty, he thought

10

that he faced a maximum prison term of 30 years. 522 F.3d 336, 342 (4th Cir. 2008). After the plea, a probation officer recommended that the Act should apply. *Id.* at 338. Thus, at the sentencing hearing, the defendant learned he faced a minimum of 45 years in jail. *Id.* at 339. The district court rejected Hairston's request to withdraw his guilty plea. *Id.* After finding that the district court erred in failing to notify Hairston of his full minimum sentence, we reviewed that error for harmlessness. *See id.* at 341; *see also* Fed. R. Crim. P. 11(h). In doing so, we concluded that the government failed to meet its burden to show the error was harmless. *Hairston*, 522 F.3d at 341–42. The record clearly showed a reasonable probability that without the error, Hairston would not have entered the plea.[6] *Id.* We rejected the government's harmless error argument because of the significant disparity between the sentences, Hairston's statement to the district court that he would not have pled guilty if he knew the full minimum sentence and his attempt to withdraw his plea. *Id.*

In *United States v. Massenburg*, the district court notified a felon-in-possession defendant of his potential maximum prison term of 10 years. 564 F.3d 337, 340 (4th Cir. 2009). Massenburg pled guilty before the probation officer recommended applying the Armed Career Criminal Act and its mandatory minimum sentence of 15 years' imprisonment. *Id.* Massenburg objected to the PSR on several grounds, but he never raised a Rule 11 error and did not seek to withdraw his guilty plea. *Id.* Accordingly, we reviewed

---

[6] The *Hairston* defendant preserved the plea colloquy issue for appellate review by "seeking to withdraw his guilty plea below." *Hairston*, 522 F.3d at 341. The court applied the same "reasonable probability" standard that we apply today, except the government carried the burden to show harmlessness. *Id.*

11

his plea colloquy appeal for plain error. *Id.* at 342. And although the district court plainly erred, Massenburg had not established a "reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 343 (quoting *Dominguez Benitez*, 542 U.S. at 83). Unlike the *Hairston* defendant, Massenburg never stated he would not have pled guilty with full information. *Id.* Nor did he move to withdraw his guilty plea. *Id.* at 343–44. And "there does not appear to be any dispute that the case against Massenburg is a strong one," so Massenburg had little to gain by going to trial. *Id.* at 344. Thus, we concluded Massenburg had not shown an effect on his substantial rights.

Most recently, we reversed a plea colloquy for plain error in *United States v. Lockhart*, 947 F.3d 187, 195 (4th Cir. 2020) (en banc). Lockhart pled guilty to felon-in-possession under § 922(g)(1), with knowledge of the statute's maximum of 10 years' imprisonment. *Id.* at 190–91. Yet again, the PSR recommended applying the Armed Career Criminal Act and its minimum of 15 years' imprisonment. *Id.* at 191. And the district court applied it, sentencing Lockhart to 180 months' imprisonment. *Id.* Lockhart challenged the plea colloquy on appeal, and we reviewed for plain error since he never objected below or moved to withdraw his plea. *Id.* at 192. Lockhart also argued that the Supreme Court's decision in *Rehaif v. United States*, 588 U.S. 225 (2019), constituted an intervening change in law requiring vacatur of his plea. *Lockhart*, 947 F.3d at 192. The parties agreed that the magistrate judge plainly erred. *Id.* And we concluded that the error affected Lockhart's substantial rights—and was thus distinct from *Massenburg*—because (1) Lockhart gained only an 8-month, 4.2% reduction in his total sentence by pleading guilty, compared with Massenburg's 23% reduction; and (2) appellate counsel represented that Lockhart would

12

go to trial following vacatur. *Id.* at 194–95. Finally, the Supreme Court's intervening *Rehaif* decision clarified the scienter requirements for § 922(g) offenses and was not available at the time of the plea colloquy. *Id.* at 196. The combined prejudice of the plea colloquy and *Rehaif* errors indicated a reasonable probability that Lockhart would not have pled guilty absent the court's errors.

Taking our precedent into account and considering this record, we find no reasonable probability that Solis-Rodriguez would have proceeded to trial absent the magistrate judge's alleged error. Unlike the defendant in *Hairston*—and like the defendant in *Massenburg*—Solis-Rodriguez neither objected to, nor moved to withdraw, his guilty plea below. *See Hairston*, 522 F.3d at 341; *Massenburg*, 564 F.3d at 343–44. Nor did he indicate any surprise at the sentencing hearing when presented with the possibility of 20 years' imprisonment. *See Hairston*, 522 F.3d at 342; *Massenburg*, 564 F.3d at 343–44. Like the defendant in *Massenburg*, Solis-Rodriguez faced the government's strong evidence—police testimony about finding the Hi-Point pistol on Solis-Rodriguez during the first incident, his admission that he owned the nine-millimeter pistol used at The Taco Bar shooting and security footage of that shooting. *See Massenburg*, 564 F.3d at 344. Unlike the *Lockhart* defendant's 8-month, 4.2% sentence reduction for pleading guilty, Solis-Rodriguez's plea slashed the applicable guidelines range from 210–240 months to 151–188 months. *See Lockhart*, 947 F.3d at 194. And unlike *Lockhart*'s intervening change in law because of the Supreme Court's *Rehaif* decision, no prejudicial and intervening change of law has occurred here. *See id.* at 196.

13

In sum, we assume the magistrate judge plainly erred in describing the maximum statutory penalty to Solis-Rodriguez. Even so, Solis-Rodriguez has failed to show a reasonable probability that he would have gone to trial absent the magistrate judge's assumed error. He has, therefore, failed to meet his burden on plain-error review.

## B. Sentencing

Solis-Rodriguez also argues his sentence is procedurally unreasonable because he raised three nonfrivolous mitigating arguments—remorse, age and lack of violent criminal history—that the district court failed to consider or address. When a party "draw[s] arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to render an individualized explanation addressing those arguments, and thus preserves its claim." *United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010).

Solis-Rodriguez never argued his remorse supported a sentence at the low end of the guidelines range. Instead, he expressed remorse during his allocution. After the allocution, Solis-Rodriguez's counsel argued for a lower sentence but did not rely on remorse. Because remorse was not a "non-frivolous reason[] *presented for* imposing a different sentence," the district court had no obligation to consider it. *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019) (emphasis added).

The government argues that Solis-Rodriguez's comments about his age and criminal history didn't amount to arguments either. And it is true that he could have clarified that he was relying on these as mitigation arguments. For example, saying that "Mr. Solis-Rodriguez stands before the Court a very young man," J.A. 108, sounds as much like a

14

statement of fact as a mitigation argument. Counsel did not elaborate on this. He did not say, for example, that Solis-Rodriguez's brain wasn't fully developed. But counsel's comments followed the district court's invitation to argue for "the appropriate sentence in this case." J.A. 107. For that reason, we conclude here that Solis-Rodriguez did argue his young age and lack of violent criminal history supported a sentence at the low end of the guidelines range. These are nonfrivolous reasons that can support a lower sentence. *See Gall v. United States*, 552 U.S. 38, 58 (2007) (age); *Lynn*, 592 F.3d at 581 (criminal history). So, Solis-Rodriguez preserved his sentencing challenge regarding age and criminal history. *See Lynn*, 592 F.3d at 578.

We review the procedural reasonableness of a criminal sentence "under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. In doing so, "[w]e consider 'whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence.'" *United States v. Shields*, 126 F.4th 356, 360 (4th Cir. 2025) (quoting *Ross*, 912 F.3d at 744). The district court must conduct an "individualized assessment on the facts before the court" and "explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Fowler*, 58 F.4th 142, 153 (4th Cir. 2023) (quoting *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020)).

As relevant here, the "district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments." *Ross*, 912 F.3d at 744. And in a routine case with a within-Guidelines

15

sentence, the explanation "need not be elaborate or lengthy." *Fowler*, 58 F.4th at 153 (quoting *United States v. Arbaugh*, 951 F.3d 167, 174–75 (4th Cir. 2020)). In fact, we can sometimes "discern a sentencing court's rationale from the context surrounding its decision." *Ross*, 912 F.3d at 745. In *United States v. Montes-Pineda*, the defendant argued that sentence disparities between jurisdictions with "fast track" programs for immigrant defendants and those without them supported a lower sentence. 445 F.3d 375, 379–81 (4th Cir. 2006). And even though the district court did not explicitly mention any jurisdictional disparities when issuing the sentence, "the court entertained arguments from both sides on whether to grant Montes-Pineda's request and engaged counsel in a discussion about the disparities" between the two kinds of jurisdictions. *Id.* at 381. We had "no basis for doubting that the district court considered Montes-Pineda's contentions." *Id.*

Turning to the case at hand, the district court adequately considered Solis-Rodriguez's age and lack of criminal history arguments and explained its reasoning. Two elements of the record, taken together, demonstrate this.

First, the district court clarified—twice—that it considered "all of the [§ 3553(a)] sentencing factors." J.A. 114; *see also* J.A. 115 ("So the Court has considered all the sentencing factors."). Section 3553(a)(1) requires a sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." The age and criminal history arguments fall under the § 3553(a) "history and characteristics of the defendant" factor. Thus, while the district court didn't mention age and criminal history specifically, it twice mentioned that it had considered a factor including those things. So,

16

the record indicates the district court considered Solis-Rodriguez's arguments for a lower sentence.

Considering non-frivolous arguments is one thing. Our precedent also requires an explanation that allows for meaningful appellate review, which brings us to the second element of the record that supports the district court's conclusion.[7] *See Gall*, 552 U.S. at 50. The "context surrounding [the] district court's explanation" sufficiently demonstrates why the court rejected Solis-Rodriguez's arguments about his age and criminal history. *Montes-Pineda*, 445 F.3d at 381. Recall that after describing what it considered, the court "highlighted some [factors] that it [found] particularly important." J.A. 115. It addressed the "very, very disturbing" nature and circumstances of the offense. J.A. 114. The district judge explained that as a father, he too shared concerns about his family. But he warned that threats against one's family do not "allow you to go and shoot and attempt to kill somebody that is not attempting to do imminent death or seriously bodily injury to you." J.A. 115. Next, the court specifically noted a need to deter Solis-Rodriguez from further criminal conduct. It also expressed the importance of generally deterring the resolution of disputes through violence. And finally, the court explained that it needed to promote respect for the rule of law.

Reviewing this discussion in its totality, the district court's reasoning is sufficiently clear. It considered the § 3553(a) factors that include age and criminal history. It then

---

[7] Indeed, the government conceded that the district court's statement that it considered all factors is not sufficient, on its own, to satisfy procedural reasonableness. *See* Oral Arg. at 34:53–35:10.

highlighted factors it felt were "particularly important." J.A. 115. This indicates that the court felt the highlighted factors were more important than—or said differently, outweighed—others.[8] That explanation permits meaningful appellate review. Thus, the sentence was procedurally reasonable.

Finally, although not necessary for, nor a basis of, our decision, we also note that the district court asked counsel "if there's any legal reason why this sentence as proposed should not be imposed?" J.A. 121. By doing so, the court offered both parties an opportunity to raise concerns with the sentence. Neither did. In light of that silence, we take this opportunity to encourage some efficiency. To minimize the risk of overlooking any unaddressed objections, district courts would be wise to ask the parties if they have any concerns with the sentence. A district court can be even more precise by asking if there are any objections to the sentence that the court has failed to address. And as for the lawyers, bringing any unaddressed objections to the court's attention while there is an opportunity to fix any perceived problems seems consistent with the duties defense counsel and the government owe as officers of the court and is compatible with the lawyers' duties to zealously represent their clients.[9]

---

[8] At oral argument, Solis-Rodriguez's counsel conceded the district court would not have erred if it said the highlighted factors "outweighed" Solis-Rodriguez's age and lack of criminal history. *See* Oral Arg. at 13:14–13:31.

[9] Our concurring colleague believes Solis-Rodriguez forfeited his sentencing challenge by failing to raise it in response to the district court. *See* Concurring Op. at 21–22. If so, we would apply plain error review to Solis-Rodriguez's procedural unreasonableness challenge. *See Lynn*, 592 F.3d at 577. But for two reasons, we decline to

18

**III.**

For these reasons, Solis-Rodriguez's conviction and sentence are,

*AFFIRMED.*

---

reach this issue. One, the government never raised this argument in its brief. So, we lack Solis-Rodriguez's position on whether he forfeited his challenge. Two, we have already concluded the district court imposed a procedurally reasonable sentence within its discretion. *See Gall*, 552 U.S. at 51. If Solis-Rodriguez cannot show abuse of discretion, applying the more difficult plain-error standard of review will not change our conclusion.

19

TRAXLER, Senior Circuit Judge, concurring in part and concurring in the judgment:

I fully join Judge Quattlebaum's well-reasoned opinion with a modest exception to Part II.B. I agree that the district court adequately considered the § 3553(a) sentencing factors and sufficiently explained the chosen sentence. Therefore, Solis-Rodriguez has failed to prevail on his sentencing challenge under both the harmless error and plain error standards of review. I write separately to address, in more detail, my view that plain error review is appropriate in this case.

I.

District courts have certain well-defined duties when sentencing criminal defendants. The court must properly calculate the defendant's advisory guidelines range, give the parties an opportunity to argue for an appropriate sentence, consider the § 3553 factors, and sufficiently explain the selected sentence. *See United States v. Shields*, 126 F.4th 356, 360 (4th Cir. 2025). "Directly relevant here is the requirement that a sentencing court address the parties' nonfrivolous arguments in favor of a particular sentence, and if it rejects those arguments, explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *Id.* (cleaned up).

Here, the district court properly calculated the advisory guideline range and gave the parties an opportunity to argue for an appropriate sentence. The court then noted that it had considered all of the sentencing factors, and highlighted the factors that it found particularly important—specifically the "very, very disturbing" nature and circumstances

of the offense, the need to deter Solis-Rodriguez from further criminal conduct, and the need to promote respect for the law.  J.A. 114.

But the district court did not immediately impose a sentence.  Instead, the district court advised the parties that it would first "*propose* a sentence that it believes is sufficient but not greater than necessary to accomplish the goals of sentencing," and "invite[d] the attorneys to listen to the proposed sentence *before* it [was] actually imposed so if there is a legal reason why it should not be imposed, [they could] so advise," J.A. 115-16 (emphasis added).  After announcing the proposed sentence, and providing the basis for it, the court then asked "counsel if there [was] any legal reason why th[e] sentence as proposed should not be imposed." J.A. 121.  Defense counsel responded, "Just the issues that we previously raised that the Court overruled." *Id.*[1]  At no point did defense counsel assert that the district court had not sufficiently considered his mitigation arguments, nor did counsel challenge the adequacy of the district court's statement of reasons for the proposed sentence.  Hearing no further objection or argument, the district court imposed the sentence as proposed.

I believe that the district court's question to counsel *prior* to imposing the proposed sentence, and defense counsel's silence in the face of that question, operated as a forfeiture

---

[1] The issues raised and overruled were defense counsel's objection to the attempted murder enhancement and his argument that defendant's two § 922(g)(5) offenses were a continuing offense with a maximum penalty of 10 years' imprisonment.  The district court assured defense counsel that these objections were preserved.

21

of defendant's argument that the district court procedurally erred in imposing the sentence—triggering plain error review.

## II.

"No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (cleaned up). The failure to do so has consequences: the "silent defendant has the burden to satisfy the plain-error rule," and the "reviewing court may consult the whole record when considering the effect of any error on substantial rights." *United States v. Vonn*, 535 U.S. 55, 59 (2002). This "[p]lain error review in the sentencing context serves worthy purposes, including inducing the timely raising of claims and objections." *United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010) (cleaned up).

Thus, the district court has specific responsibilities when sentencing defendants. But so does defense counsel. "[T]he value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on." *Vonn*, 535 U.S. at 73. He must demonstrate plain error on appeal. This "contemporaneous objection rule [also] prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Puckett v. United States*, 556 U.S. 129, 134 (2009); *id.* at 140 ("[R]equiring the objection means the defendant

cannot 'game' the system, waiting to see if the sentence later strikes him as satisfactory, and then seeking a second bite at the apple by raising the claim.") (cleaned up).  When the district court is apprised of the claim, it "can grant an immediate remedy . . . and thus avoid the delay and expense of a full appeal." *Id.*

In this case, appellant's counsel (who was not defense counsel at sentencing) argued that the district court failed to adequately consider the arguments and failed to adequately explain the sentence at the hearing—necessitating a full resentencing.  When questioned as to whether plain error review should apply because defense counsel did not speak up in response to the district court's inquiry, appellate counsel relied upon our decision in *Lynn* to argue that there was no such obligation.  I disagree.

In *Lynn*, we held that defense counsel is not required "to complain about a judicial choice *after* it has been made" to preserve an objection.  *Lynn*, 592 F.3d at 578 (emphasis added) (cleaned up).  We observed that "[r]equiring a party to lodge an explicit objection *after* the district court explanation would saddle busy district courts with the burden of sitting through an objection—probably formulaic—in every criminal case." *Id*. (emphasis added) (cleaned up); *see also United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("[T]he rules do not require a litigant to complain about a judicial choice *after* it has been made.  Such a complaint is properly called, not an objection, but an exception"—which the rules do not require.) (emphasis added).

But that is not what happened here.  The district court ensured that the parties understood that it would first *propose* a sentence.  The district court then explained the

proposed sentence and the reasons for it. And before imposing the proposed sentence, the court invited counsel to point out any legal reason as to why the sentence should not be imposed. In other words, the court was *inviting* further argument and objections *before* imposing the sentence. If counsel believed that the court had failed to sufficiently consider a mitigating argument or that its explanation was inadequate, this was the opportunity to speak up. Otherwise, counsel could indeed sandbag the court, standing quietly by and gambling on the prospect of a remand for resentencing if this court, in hindsight, questions whether the explanation was sufficient.

### III.

I concur with the majority's determination that the district court did not commit procedural error in imposing Solis-Rodriquez's sentence. I also applaud the majority's decision to encourage judicial efficiency by recommending that district courts ask the parties if they have concerns about the sentence or if there are any objections that the court failed to address. But I would go farther, confront the question of what standard of review applies, and provide some needed guidance—even if only prospectively—to our hardworking district courts.

This court receives countless appeals by criminal defendants premised on the failure of a sentencing court to tick through each nonfrivolous argument offered in support of a lower sentence and explain how it was considered and why it was rejected. District courts unquestionably have duties to the parties and this court, but the parties have duties too. When a district court, following argument, proposes a sentence and *invites* the attorneys to

24

tell the court if there is any legal infirmity, the duty of counsel becomes paramount. If counsel believes the court has failed to sufficiently consider an argument or adequately explain the proposed sentence, he should not be allowed to sit silently by, preserve an opportunity to complain about it on appeal, and put the government to the task of proving harmless error.

I also commend the district court in this case for its attempt to elicit objections to the proposed sentence, including any objection to the sufficiency of the district court's explanation for the proposed sentence. If Solis-Rodriguez's counsel "had objections to the sentence imposed or, more particularly, to the decision-making process, he could and should have raised them at a time and in such a way as to afford the trial judge an opportunity to correct any error, clarify any ambiguity or elaborate as necessary." *United States v. Steele*, 603 F.3d 803, 807 (10th Cir. 2010). And because he did not, plain error was, in my judgment, the proper standard of review.

Prospectively, I also encourage our district courts to take steps to verify with the parties that the court has adequately addressed all of the arguments for a sentence they have advanced and sufficiently explained the court's reasons for a proposed sentence before it is imposed. This will "allow[] the judge to immediately remedy omissions or clarify and supplement inadequate explanations," *United States v. Flores-Mejia*, 759 F.3d 253, 258 (3rd Cir. 2014), and serve the additional purpose of "guiding appellate review," *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004); *see also United States v. Pyles*, 862 F.3d 82, 87 (D.C. Cir. 2017) ("Where either the defense or the prosecution believe that the

25

trial court has overlooked an argument in favor of mitigating or enhancing the sentence, we should 'induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them,' and thereby 'correct or avoid the mistake so that it cannot possibly affect the ultimate outcome.'") (quoting *Puckett*, 556 U.S. at 134); *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990) (noting that the sentencing "appeal could have been avoided if the court, after pronouncing sentence, had asked counsel whether there were any objections—to the sentence or to the manner in which the court pronounced it—other than those previously stated for the record."). Such an inquiry will "ensure that the parties, especially the defendant, have been heard and that the record is complete for purposes of appeal"; and any burden associated with this approach "pales in comparison to the time and resources required to correct errors through a lengthy appeal and resentencing." *United States v. Hunter*, 809 F.3d 677, 682 (D.C. Cir. 2016) (cleaned up); *see also Flores-Mejia*, 759 F.3d at 258 ("Our strong interest in judicial economy, heightened in these times of fiscal restraint and judicial budgetary concerns, weighs heavily in favor of a rule under which the defendant must contemporaneously object to concerns regarding the procedural reasonableness of a sentence.").

I see no reason why these important considerations should not also lead this court to require that the parties contemporaneously object, when given the opportunity, to the sufficiency of the district court's consideration of a mitigating argument or its explanation for a proposed sentence. If the opportunity is given and squandered, an assertion of error

26

in the court's explanation later on appeal should be deemed forfeited and therefore subject to plain error analysis.[2]

---

[2] My colleagues have declined to address the question of whether Solis-Rodriguez forfeited his procedural reasonableness challenge because the government did not raise this argument in its brief and a finding of forfeiture would not change the outcome of this appeal. They are correct on both counts. But the question of whether the issue was forfeited by the defendant affects our standard of review. And I would take the opportunity to reach that issue. *See United States v. Naum*, 134 F.4th 234, 241 (4th Cir. 2025) ("[C]ourts must apply the proper standard of review even if the parties have not."); *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 286 (4th Cir. 2018) ("[P]arties cannot waive the proper standard of review by failing to argue it.") (cleaned up); *United States v. Escobar*, 866 F.3d 333, 339 n.13 (5th Cir. 2017) (per curiam) ("A party cannot waive, concede, or abandon the applicable standard of review."); *see also Moody v. Netchoice, LLC.*, 603 U.S. 707, 779-780 (2024) (Alito, concurring) ("It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind a court to the application of an incorrect legal standard."). In any event, even if the government could forfeit the standard of review applicable to sentencing errors, we can always exercise our "discretion to reach a forfeited issue." *Stokes v. Stirling*, 64 F.4th 131, 136 n.3 (4th Cir. 2023). When defense counsel remains silent in the face of a district court's request that it be advised of any potential sentencing errors *before* sentence is formally imposed, sandbagging courts in derogation of concerns for judicial efficiency and economy, I would do so.